SCHMITZ, Appellant, vs. WISCONSIN SOAP MANUFACTURING COMPANY and others, Respondents.

*February 11—March 10, 1931.*

150

152

*James J. Kerwin* of Milwaukee, for the appellant.

For the respondents there was a brief by *Joseph A. Barly,* attorney, and *McGovern, Curtis & Devos* of counsel, all of Milwaukee, and oral argument by *H. K. Curtis.*

WICKHEM, J. The appellant's contentions are that the defendant company was insolvent as far back as 1925, and that the chattel mortgages taken by Barly constituted an unlawful preference as against other creditors of the defendant corporation, and hence are void.

According to a majority of courts, an insolvent corporation, so long as it remains a going concern in possession and control of its property, may prefer one creditor to another, even though that creditor be an officer or director. Note 5 A. L. R. 561; 7 Ruling Case Law, p. 755. In some jurisdictions this rule is not approved. 7 Ruling Case Law, p. 757. In Wisconsin it would seem that there is a distinction between preferences to directors and officers, which by the decision in *Haywood v. Lincoln Lumber Co.* 64 Wis. 639, 26 N. W. 184, appear to be condemned, and preferences to others, which seem to be recognized as valid. *Ford v. Hill,* 92 Wis. 188, 66 N. W. 115; *Ford v. Plankinton Bank,* 87 Wis. 363, 58 N. W. 766; *Ballin v. Merchants' Exch. Bank,* 89 Wis. 278, 61 N. W. 1118. It is of course elementary that insolvency at the time of the transaction which is charged as constituting a preference is indispensable in establishing the existence of a preference. *Hinz v. Van Dusen,* 95 Wis. 503, 70 N. W. 657; *South Bend Chilled Plow Co. v. George C. Cribb Co.* 97 Wis. 230, 72 N. W. 749. The reason for this is obvious. The only ground upon which a payment to one creditor can be urged as a preference is that assets are insufficient to pay all the

creditors in full, and that therefore the payment to one creditor of a greater sum than a ratable distribution would give to him operates to the extent of the excess to reduce the dividends of the other creditors.

Insolvency, in its relation to preferences, does not mean the inability of the concern or person giving the alleged preference to meet current obligations as they become due in the regular course of business. Neither does it mean that the company or person is presently operating its business at a loss. It simply means that the assets of the alleged insolvent are insufficient, at a fair valuation, to pay his debts. This being true, most of the attack upon the solvency of the defendant corporation by the appellant must fail. There is no finding of insolvency, and while it is true that the company operated at a loss during all the period of its active life, there is no showing that its assets, at the time of the mortgages in question, were not sufficient, at a fair valuation, to meet its obligations. From this it follows that the transactions in question cannot successfully be attacked as preferences.

The other question in the case involves the right of Barly as an officer and director of the company to receive whatever advantages are involved in the mortgages, due to his official position with the company. In *Wyman v. Bowman,* 127 Fed. 257, the court said (p. 273) :

"There is no sound reason why individuals who are directors of a corporation may not come to its assistance in days of financial distress; may not make their contracts to loan money to it; to receive security from it for repayment; to accept payment of obligations to them, to buy property from, or sell property to, it; or to do any other act beneficial to the corporation, or mutually advantageous to both the corporation and the individuals. . . . Contracts and transactions between individuals and corporations of which they are directors or officers, which are fair, which are made in good faith, which do not secure to the individuals any

undue or unjust benefit or advantage, and in which the interest of the individuals and the duty of the officials work in unison for the welfare of the corporation, are valid and enforceable both at law and in equity."

This is the modern view with relation to contracts between the directors and officers of the corporation and the corporation. Such contracts as are entered into in accordance with this view are, to use the words of the supreme court of the United States in *Twin-Lick Oil Co. v. Marbury,* 91 U. S. 587, "to be viewed with jealousy by the courts." In that case it is said:

"While it is true that the defendant, as a director of the corporation, was bound by all those rules of conscientious fairness which courts of equity have imposed as the guides for dealing in such cases, it cannot be maintained that any rule forbids one director among several from loaning money to the corporation when the money is needed, and the transaction is open, and otherwise free from blame. No adjudged case has gone so far as this. Such a doctrine, while it would afford little protection to the corporation against actual fraud or oppression, would deprive it of the aid of those most interested in giving aid judiciously, and best qualified to judge of the necessity of that aid, and of the extent to which it may safely be given."

Returning to the *Hinz Case,* heretofore cited, it is evident that the doctrine of the two federal cases is approved, for in the *Hinz Case* the court said:

"Insolvency of the corporation is absolutely essential. Without that the directors are trustees for the stockholders primarily, and may in good faith pay a *bona fide* indebtedness to themselves, or may secure such indebtedness by a mortgage upon the corporate property or otherwise. It is when a corporation ceases to be a going institution, or its business is in such shape that its directors know, or ought to know, that suspension is impending, that its assets in the hands of such directors become, by equitable conversion, a trust fund for the benefit of its general cred-

itors, so that, if such directors prefer themselves over such general creditors, such action constitutes a fraud in law, and equity will compel them to make restitution of all property thereby diverted to their personal benefit to the prejudice of such creditors."

In the *South Bend Chilled Plow Co. Case,* heretofore cited, it is said:

"But insolvency is not alleged, so no reason appears why the preferences were not properly made, even though the fortunate creditors were represented on the board of directors of the debtor corporation, and were personally interested in obtaining the preferences."

In *Glenwood Mfg. Co. v. Syme,* 109 Wis. 355, 361, 85 N. W. 432, the case of *Twin-Lick Oil Co. v. Marbury,* heretofore cited, is quoted in connection with a statement by the court that a director "must deal with the interests confided to his care with conscientious fairness, and will not be permitted to secure advantages by virtue of his position prejudicial to the interests he represents." The court goes on to say that "the strictness of the earlier cases is somewhat relaxed in instances when the corporation is still a going concern, as will be noted in the case last above cited (referring to *Hinz v. Van Dusen,* 95 Wis. 503, 70 N. W. 657). There the distinction between the power of directors in a solvent and insolvent corporation is pointed out by Mr. Justice MARSHALL, and is reasserted in *South Bend Chilled Plow Co. v. George C. Cribb Co.* 97 Wis. 230, 72 N. W. 749. . . . The cases all agree that an officer or director cannot rightfully seek and obtain profit at the expense of the corporation or its stockholders, and is bound to manage its business affairs so as to promote the common interests."

The evidence in this case supports the finding of the trial court that the defendant Barly, in good faith and with the hope of ultimately getting the defendant company up on a profitable basis, made frequent and large advances to the

company. It also sustains the finding that this was done with the full knowledge of the stockholders and directors, including the plaintiff, and that the transactions were ratified by the stockholders and directors. The evidence supports the finding of the trial court that there were opportunities, prior to the attachment proceedings, to sell this business as a going concern at a price which would have met its obligations, and that the attachment proceedings instituted by plaintiff were effective to interrupt the company's business, and cause it to lose its trade and its value as a going concern. It is not disputed that the defendant Barly has turned in for the benefit of the creditors of the company all sums received as a result of the sale of the property mortgaged, and this has been disbursed to creditors. While this may not have any independent legal effect, it at least is some evidence of the good faith of the transactions in question, and probative of the fact that Barly was not seeking to secure improper advantages at the expense of the company and its creditors. This is a case where those interested in the corporation, with or without foundation, apparently considered that there was hope for successful prosecution of its business provided it could be kept going. The evident interest of Barly in making advances was to keep it going. The court is unable to find any such conduct on the part of the defendant Barly as would entitle the plaintiff to the relief he seeks.

*By the Court.*—Judgment affirmed.