64 N.J. Super. 537 (1960)
166 A.2d 789
DANIEL KIEVIT, PLAINTIFF-APPELLANT,
v.
LOYAL PROTECTIVE INSURANCE COMPANY, ETC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1960.
Decided July 12, 1960.
*539 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Ervan Kushner argued the cause for appellant (Messrs. Kushner & Kleiner, attorneys; Mr. Ervan Kushner, of counsel; Mr. Robert Kleiner, on the brief).
Mr. Nicholas Conover English argued the cause for respondent (Messrs. McCarter & English, attorneys; Mr. Nicholas Conover English, of counsel).
The opinion of the court was delivered by HANEMAN, J.A.D.
Plaintiff instituted suit in the Superior Court to recover on an accident insurance policy executed by the defendant on March 21, 1952. Plaintiff appeals from a dismissal of his action, from the trial court's denial of his motion for a stay of the judgment and for a new trial, and because the court did not apply the law of Massachusetts.
Under the terms of the policy, defendant agreed to pay plaintiff $200 monthly indemnity "against loss directly and independently of all other causes from accidental bodily injuries," and

"Part IX. Reductions and Exceptions
The insurance under this policy shall not cover disability or other loss resulting from or contributed to by any disease or ailment, * * *."
*540 The trial was had before a judge without a jury. The testimony discloses that:
On August 19, 1957 plaintiff, while in his general employment as a carpenter, was struck over the left eye by a 2 x 4 board and seriously injured. Despite his injuries he continued to work until August 23, 1957, when he was forced to leave work because his right arm began to shake. On that day he was treated by Dr. Manrodt, who prescribed pills and "worked on the shoulder." Dr. Manrodt became ill and plaintiff was referred to Dr. Brown. He was then treated by other doctors, including Dr. Ramundo, and subsequently, in November of 1957, came under the care of Dr. Winkler who, at the trial, was plaintiff's sole medical witness. Plaintiff was confined to a hospital from November 26, 1957 until December 10, 1957, during which time he was under the care of Dr. Winkler and was also treated by Dr. Hirschfeld.
Plaintiff testified that he worked steadily as a carpenter for many years until the date of the accident and that until that time he was in good health. He admitted, however, that he had seen Dr. Manrodt about two weeks prior to the accident, complaining that he "felt tired."
Dr. Winkler testified that on the basis of his examination of plaintiff he concluded that the accident was the "precipitating cause" of the illness which followed and which he diagnosed as "conversion hysteria," described as a "psychiatric term which indicates that the anxiety which a patient normally has is not allowed to come to the surface but instead manifests itself in some physical manner, usually an involuntary or abnormal movement or occasionally in a paralysis or the weakness of an extremity, sometimes pain in a portion of the body." He stated that plaintiff's disability was due in part to an inadequate personality which he felt antedated the accident. On cross-examination, in response to a question as to whether plaintiff's condition *541 as it developed may have been the result of an inadequate personality plus the accident, he said:
"Yes, or a sudden serious thing of this sort. I think the best way of explaining this is going a little bit further. Some of the illness here is a disease produced, that is, the man had the original illness and then the fact that he is sick causes further anxiety and causes him to retreat further into the actual conversion hysteria * * *."
There was introduced into evidence a written statement dated February 7, 1958 and signed by Dr. Winkler, in which he said:
"It is my opinion that partial relationship to these tremors can possibly be attributed to this blow on the head; all tests were normal."
In other words, Dr. Winkler had then stated there is only a possible relationship between the tremors and the blow on the head.
The sole medical witness who testified for defendant was Dr. Policastro, who appeared in response to a subpoena. Dr. Policastro had previously testified in a workmen's compensation proceeding on behalf of plaintiff. Dr. Policastro did not treat the plaintiff prior to the date of the accident and his testimony and conclusions are a result of his examination of plaintiff over a period of time subsequent thereto. The gist and effect of his testimony was that Parkinson's disease was running in a slow chronic form prior to the accident and that the accident aggravated or accelerated it. He testified that very few people in the medical profession believe that trauma is a cause of Parkinson's disease. He stated that Parkinson's disease is a progressive type of disease and further testified that plaintiff had the two main symptoms of the disease, namely, tremors and muscular rigidity.
There are also in evidence exhibits in connection with the proof of loss claim submitted by plaintiff which consist of *542 statements by Doctors Hirschfeld and Ramundo. The former stated that plaintiff's disability is due to "Parkinson's syndrome," while Dr. Ramundo stated it is due to a "Jacksonian type of convulsion."
Defendant paid plaintiff total disability payments amounting to $200 a month for a period from August 23, 1957 until December 23, 1957. Defendant then stopped the payments, claiming that its medical investigation disclosed that plaintiff's injuries were not caused "directly" and solely by the accident and, moreover, that the company was absolved from liability by the provision which requires that disability be independent of all other causes. Since disability was, in effect, admitted, the sole issue at the trial was whether plaintiff's disability occurred in such a manner as to bring him within the terms of the policy.
Judgment was rendered for defendant on October 21, 1959. On October 31, 1959 plaintiff filed a motion to stay the judgment and made a motion for a new trial. The motion was heard November 13, 1959, at which time plaintiff indicated his desire to submit into evidence certain documents, including two physicians' reports which had been submitted to defendant as part of plaintiff's proof of loss; testimony of Dr. Mandrodt, taken at a prior workmen's compensation hearing based on this same accident, to the effect that plaintiff showed no tremors when plaintiff visited him some two weeks prior to the accident; and the judgment and part of the opinion of the Morris County Court which affirmed the findings of the deputy director in the workmen's compensation proceeding.
Our initial concern is with the choice of law applicable to the facts as presented. In this regard the contract of insurance provided that it was to become effective only upon the execution of the policy by defendant in the State of Massachusetts; notice of injury had to be submitted on company forms to the company offices in Massachusetts; proof of loss had to be sent to the company's office in Massachusetts for action to be taken thereon; and payments *543 could only be issued from the company's offices in Massachusetts.
The construction of a contract must be governed by the law of the state in which the contract is made, and this general rule is applicable to insurance policies. Buzzone v. Hartford Accident and Indemnity Co., 41 N.J. Super. 511 (App. Div. 1956), affirmed 23 N.J. 447 (1957).
Plaintiff had requested that judicial notice be taken of Massachusetts law in his pretrial memorandum as well as in a letter sent to the trial court several months prior to the trial. Defendant's attorney also received a copy of this letter. The Uniform Judicial Notice of Foreign Law Act (N.J.S. 2A:82-27 et seq.) has been interpreted liberally, as was stated by Justice Burling in Collozi v. Bevko, Inc., 17 N.J. 194, 203 (1955):
"Insofar as the statute refers to the necessity of `pleading' the foreign law, we have held that the issue of status of the pertinent law of the foreign jurisdiction may be raised not only in a complaint, but in an answer, at a pretrial conference `or, with permission of the court, at the trial itself.' Leary v. Gledhill, 8 N.J. 260, 270 (1951)."
The law of Massachusetts, therefore, governs the construction of the contract and should have been applied.
The law of Massachusetts with regard to this point is aptly stated in Brown v. United States Fidelity & Guaranty Co., 336 Mass. 609, 147 N.E.2d 160 (Mass. Sup. Jud. Ct. 1958), where it was said:
"The Howe case [321 Mass. 283, 72 N.E.2d 425] and the authorities therein cited, show the clear line of distinction adopted by our decisions between (a) death caused by a disease induced by the injury, even if the insured had some `frailty or general weakness * * * (or) predisposition to a disease, or * * * a disease then * * * dormant' and (b) `the aggravation of an existing heart disease by an accident' so that death is `caused by the joint operation of a pre-existing disease,' in which event the `accident is not within the scope of the policy.'"
However, the law of New Jersey is to all intents and purposes identical with that of Massachusetts. In Runyon v. *544 Monarch Accident Ins. Co., 108 N.J.L. 489, 491 (E. & A. 1932), the court said:
"The instruction was well within the general rule that, under such a policy, if the insured, at the time of the accidental injury, was also suffering from a disease, and the disease aggravated the effects of the accident, and actively contributed to the death occasioned thereby, there can be no recovery upon the policy."
See also Runyon v. Commonwealth Casualty Co., 109 N.J.L. 238 (E. & A. 1932); Cramer v. John Hancock, &c. Ins. Co., 18 N.J. Misc. 367 (Cir. Ct. 1940). It is immaterial, therefore, whether on the facts the law of Massachusetts or that of New Jersey was applied. The application of the law of New Jersey by the trial judge does not constitute prejudicial error.
While it is true that we all carry within ourselves the seeds of our own destruction and that mere susceptibility without more will not bar recovery, Silverstein v. Metropolitan Life Ins. Co., 254 N.Y. 81, 171 N.E. 914 (Ct. App. 1930), nevertheless, in light of the conflicting testimony presented, we cannot say that the finding that plaintiff's present disability was caused by the joint operation of a latent pre-existing condition and the blow on the head was error as a matter of law or that the issue has been removed from the realm of reasonable dispute so as to require us to disturb the trial judge's findings.
R.R. 1:5-4, made applicable to this court by R.R. 2:5, provides:
"(a) The court may exercise such original jurisdiction as may be necessary to complete determination of any cause on review.
(b) On a review of any cause, criminal or civil, involving issues of fact not determined by the verdict of a jury, new or amended findings of fact may be made, but due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."
In New Jersey Highway Authority v. J. & F. Holding Co., 40 N.J. Super. 309 (App. Div. 1956), the court stated at page 317:
*545 "* * * although we are empowered to make our own independent findings where the controversial issue is essentially factual, yet we are not disposed on appeal to overturn the conclusions of the trier of the facts unless it is our conviction that such conclusions are so manifestly unsupported by or inconsistent with the competent, relevant, and reasonably credible evidence as to offend the interests of justice. Koolvent Aluminum Awning Co. of New Jersey v. Sperling, 16 N.J. Super. 444, 447 (App. Div. 1951); Trusky v. Ford Motor Co., 19 N.J. Super. 100, 103, 104 (App. Div. 1952); Julius Reiner Corporation v. Sutton, 23 N.J. Super. 93, 96 (App. Div. 1952)."
Testing the evidence as presented with the criteria above, we feel that this court should not disturb the conclusions of the trial judge. In light of the testimony and other evidence adduced we cannot say that reversible error was committed when due regard is given to the trial judge's opportunity to judge the demeanor and credibility of the witnesses. Aside from the exhibits indicated, there were but three witnesses at the trial. Plaintiff testified in effect that he was in good health prior to the accident, but nevertheless he saw Dr. Mandrodt about two weeks prior to the accident because he felt tired. Dr. Manrodt, who could have shed light on whether or not a pre-existing disease was present, was not called to testify. Plaintiff's medical witness, Dr. Winkler, testified that in February 1958 he was of the opinion that only a "partial relationship to these [plaintiff's] tremors can possibly be attributed to this blow on the head." Defendant's doctor was of the opinion that no more than two-thirds of the disability could be attributed to this accident. The trier of the facts did not appear to be overly impressed by plaintiff's witness. He stated as part of his conclusions:
"It seems to me that the conclusion of Dr. Winkler is based on what I would call a psychiatric conjecture."
The trial judge concluded:
"Here it would appear that the man had a pre-existing condition and that that contributed to his disability, and I am not sure that *546 this accident alone is what activated the fact that he was under treatment or visited a doctor just before the accident, two weeks before, is some indication that he was having trouble and that it could very well have been related to this Parkinson's condition. * * * It is my conclusion on all the proofs that the plaintiff has not sustained the burden of proof here and, therefore, there will be a judgment for the defendant."
Plaintiff contends, and correctly so, that the conclusions of an expert must be based either upon facts within his personal knowledge or upon hypothetical questions, embracing facts supported by the evidence and relating to the particular matters upon which the expert opinion is based, which facts, for the purpose of the opinion, are assumed to be true, Beam v. Kent, 3 N.J. 210 (1949). He reasons that since Dr. Policastro had no independent knowledge of plaintiff's condition preceding the accident and since no proper hypothetical question was addressed to him, his testimony is worthless. Dr. Policastro did conclude that there was a pre-existing disease. We need not decide whether his testimony is worthless as contended, and we express no opinion along those lines since, even conceding that point arguendo, in light of the other facts set forth above, there was sufficient evidence to justify a conclusion that there was a pre-existing condition and that the disability was not independent thereof, as the contract of insurance required.
It is plaintiff's burden to prove that he comes within the terms of the policy. Dittmar v. Continental Casualty Co., 29 N.J. 532 (1959).
21 Appleman, Insurance Law and Practice, § 12171, p. 80 (1947), states:
"The plaintiff suing upon an accident policy or double indemnity feature of a life insurance policy has the burden to prove that the loss occurred solely from external, violent, and accidental means, and was not contributed to by bodily infirmity or disease. This is particularly true where the evidence shows clearly an existing disorder, bodily infirmity, or idiosyncratic condition, or some disease developing subsequent to the injury, the burden being on the plaintiff to show that the loss came within the insuring agreement and not within any exception or limitation thereto."
*547 There was ample justification for the trial judge's conclusion that plaintiff had not sustained his burden in light of the testimony elicited on direct and cross-examination of plaintiff and the medical witnesses, as well as from the exhibits.
Plaintiff next contends that the trial court erred in denying plaintiff's motion to stay the judgment and for a new trial.
R.R. 4:1-2 provides:
"These rules are intended to provide for the just determination of every civil proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."
However, the liberality and flexibility of R.R. 4:1-2 should not be allowed to obscure the need for timely, orderly and efficient disposition of litigation. This rule was not intended to open the flood gate to allow a rehash of a case. As was stated in Sokol v. Liebstein, 9 N.J. 93, 99 (1952):
"A motion for a new trial is addressed to the sound discretion of the trial judge to be exercised with a view to the manifest rights of the parties and the prevention of injustice and oppression under all the circumstances of the case. The exercise of this discretion will be interfered with by an appellate tribunal only when the action of the trial court constituted a clear abuse of that discretion."
Plaintiff desires to reopen the proof to introduce into evidence the reports of Dr. Hirschfeld and Dr. Ramundo, the opinion of Judge Mintz in affirming the award of the Workmen's Compensation Division, as well as the testimony of Dr. Manrodt taken in the workmen's compensation proceeding.
The documents sought to be introduced were the medical certificates referred to which accompanied the proof of loss statements. Plaintiff had placed in evidence other such certificates. Plaintiff was thus well aware at all times of their contents and any support to his case that might have been contained therein. Plaintiff could have introduced *548 these documents in evidence at the trial but failed to do so. As to the opinion of Judge Mintz in the workmen's compensation proceeding, the defendant here was not a party to that proceeding and was not in any way concluded by the judgment. Dransfield v. Citizens Casualty Co. of N.Y., 5 N.J. 190, 194 (1950). In any event, the subject matter of that judgment is totally irrelevant here. The testimony of Dr. Mandrodt taken at the workmen's compensation proceeding is incompetent as hearsay and not admissible under any of the exceptions to that rule of exclusion. Aside from any question of its admissibility, the evidence that plaintiff now attempts to introduce was available, known to plaintiff and could have been introduced at the trial. We cannot say that it was an abuse of discretion for the trial court to refuse to consider this evidence after the close of the case. The mere fact that this case was tried before a judge would not alter the fact. Plaintiff was given every opportunity to prepare and present his case. While plaintiff was perhaps not informed by defendant's pleadings that the specific defense of pre-existing Parkinson's disease would be made, plaintiff was necessarily aware of his burden of showing that the injury was a direct and independent cause of his condition. It is not unreasonable to conclude that the testimony of his own witness, Dr. Policastro, at the workmen's compensation proceeding, to the effect that Parkinson's disease was a component of plaintiff's condition, should have alerted plaintiff to the possibility of a defense based along those lines.
Balancing, as we must, the nature and weight of the evidence sought to be introduced at the later date and the degree of justifiable surprise and unpreparedness on the part of the proponent of the evidence against the need for efficient and workmanlike trial proceedings, we conclude there was no abuse of discretion and conclude that the matter was properly decided. Plaintiff had his "one bite at the apple."
Affirmed.
*549 GOLDMANN, S.J.A.D. (concurring).
In order to establish his right to total disability benefits under defendant's accident policy, plaintiff had the burden of proving the requisite facts which would bring him within the four corners of the coverage. Kresse v. Metropolitan Life Ins. Co., 111 N.J.L. 474, 480 (E. & A. 1933). This required him to establish that his disability resulted "directly and independently of all other causes from accidental bodily injuries"  here, the injury sustained August 19, 1957  and, further, that his present condition did not result from or was contributed to by any disease or ailment. The determinant here is the expert medical testimony and the physicians' statements accompanying proofs of loss introduced in evidence as plaintiff's exhibits.
The trial judge, sitting without a jury, concluded that plaintiff had not sustained his burden of proof. R.R. 1:5-4(b) (our rule R.R. 2:5) directs that in such a case we give due regard on appeal to the opportunity of the trial court to judge of the credibility of the witnesses. But what is involved here is not credibility but simply whether plaintiff clearly established his case by a preponderance of the evidence. Although the rules of court permit a greater scope of appellate review in a non-jury case and empower us to make new or amended findings of fact, we will not disturb the findings and conclusions of the trial judge unless we are convinced that they are so wholly unsupportable as to offend the interests of justice. Greenfield v. Dusseault, 60 N.J. Super. 436, 438, 444 (App. Div. 1960), affirmed per curiam 33 N.J. 78 (June 13, 1960); New Jersey Highway Authority v. J. & F. Holding Co., 40 N.J. Super. 309, 317 (App. Div. 1956). Every intendment is in favor of the judgment under review; we should not disturb the trial court's finding of fact unless we are well satisfied that it is a mistaken one. Capone v. Norton, 11 N.J. Super. 189, 193 (App. Div. 1951), affirmed 8 N.J. 54 (1951).
Neither of the medical experts had examined plaintiff prior to the accident of August 19, 1957. Dr. Winkler, who testified *550 for plaintiff, first saw him at the hospital on November 28, 1957. His "impression" was that he was dealing with a "conversion hysteria secondary to the accident and that there was no organic disease." He examined him a number of times thereafter at the hospital and at his office. In his view the conversion hysteria had been precipitated by the trauma of the accident; the doctor felt that plaintiff "probably had some inadequate personality, inadequate to meet the more serious stress of life than is usually encountered. I have no proof of this but I am gauging this on the type of reaction he had and on the previous history."
As against this we have the expert medical testimony of defendant's Dr. Policastro, who examined plaintiff May 14, 1958. He diagnosed his condition as Parkinson's disease. On the basis of his examination of plaintiff and the history he received from him, the doctor was of the opinion that the disease preexisted the accident; it had been "running in a chronic form, a very slow progress, and * * * the accident aggravated it and it became much more pronounced and then began to run a subacute form." Such had also been his opinion when he testified for plaintiff in a prior compensation proceeding. In answer to a question whether trauma could bring on Parkinson's disease, Dr. Policastro said that very, very few in the medical profession would be of that opinion; medical men generally held that the condition was brought on by arteriosclerosis, infection or toxicity of some kind. The disease was progressive, although there was medication that could attenuate the tremors and rigidity symptomatic of Parkinson's disease. Diathermy massage might also give temporary relief.
In addition to Dr. Policastro's testimony there was the statement of Dr. Ramundo, who had seen plaintiff at his office on September 19 and 24, 1957, and subsequently at the hospital. This was one of the physician's statements accompanying the proofs of loss which plaintiff submitted in evidence. He described his patient's disability as "due to Jacksonian type of convulsions of the right hand," a condition *551 described by Dr. Policastro as a form of epilepsy. There was also the statement of Dr. Herschfeld, who had seen plaintiff on February 21, 1958 and who described his disability as "due to Parkinson's Syndrome." Finally, there was the report of a neuropsychiatric examination made at plaintiff's instance by Dr. Effron on April 13, 1958. Although his diagnosis may be characterized as one of conversion hysteria, he nevertheless reported that the injury which plaintiff had sustained could not have been the cause of the symptoms which he found: it was "not sufficient to cause any structural disease of the nervous system, and could not have been responsible for the evident pyramidal tract sign on the left."
My review of the entire record, with particular attention to the medical testimony and exhibits, leads me to conclude, as did the trial judge, that plaintiff did not discharge his burden of proving that his disability resulted from a cause within the policy coverage.
Although the law of Massachusetts was not applied, it was brought to the attention of the trial judge both in plaintiff's trial brief and in a letter to the court prior to trial. The Uniform Judicial Notice of Foreign Law Act, N.J.S. 2A:82-27, is remedial in nature and is to be given a liberal interpretation. Franzen v. Equitable Life Assurance Society, 130 N.J.L. 457, 461 (Sup. Ct. 1943). As was pointed out in Colozzi v. Bevko, Inc., 17 N.J. 194, 204 (1955), "the rules of procedure should be designed to bring the foreign law before the court, should be flexible enough to allow for correction of inadvertent omissions, and should be keyed to effect but one result  the administration of substantive justice as it would be administered in the foreign court."
I agree with my colleagues that the law of Massachusetts clearly should have been applied by the trial judge. However, it does not aid plaintiff. He relies principally upon Leland v. Order of United Commercial Travelers of America, 233 Mass. 558, 124 N.E. 517 (Sup. Jud. Ct. 1919). Under the medical proofs developed here, that case actually supports *552 defendant's position. And see Brown v. U.S.F. & G. Co., 336 Mass. 609, 147 N.E.2d 160 (Sup. Jud. Ct. 1958), for the latest discussion of the subject and a review of the Massachusetts cases.
The result would be the same under our own cases, among them Runyon v. Monarch Accident Ins. Co., 108 N.J.L. 489 (E. & A. 1932), and its companion case, Runyon v. Commonwealth Casualty Co., 109 N.J.L. 238 (E. & A. 1932); and cf. Shopp v. Prudential Ins. Co., 115 N.J.L. 162 (E. & A. 1935); Cramer v. John Hancock Mutual Ins. Co., 18 N.J. Misc. 367, 13 A.2d 651 (Cir. Ct. 1940).
I also agree that the trial court properly denied plaintiff's motion to stay the judgment and for a new trial. The primary purpose of the motion was to reopen the proofs and to introduce additional evidence. Obviously, all of the evidence he sought to add to the record was available at the time of trial  indeed, there is no attempt to suggest the contrary  so that we do not have a situation where a reopening could properly be sought on the ground of newly discovered evidence. Cf. Hodgson v. Applegate, 55 N.J. Super. 1, 13 (App. Div. 1959), affirmed 31 N.J. 29 (1959).
The reports of Dr. Hirschfeld and Dr. Ramundo, which plaintiff by his motion sought to have received in evidence, were known to his attorneys prior to trial. Copies were affixed to defendant's answers to interrogatories served on them well before the trial date. Additionally, plaintiff failed to lay a proper foundation of authentication for the admission of these reports in evidence. 7 Wigmore on Evidence (3d ed. 1940), § 2130, p. 570. Neither of the doctors was produced or offered as a witness, nor was any foundation laid within the requirements of the Uniform Business Records as Evidence Act, N.J.S. 2A:82-35.
Plaintiff also sought to introduce the testimony given by his first physician, Dr. Manrodt, at the compensation hearing in June 1958, as well as the County Court judge's opinion in that proceeding. Defendant was not a party in the compensation case and so cannot be bound by what Dr. Manrodt *553 testified there, nor concluded by any judgment rendered therein. Moreover, the issues in the compensation proceeding were different from those involved here. In such a proceeding, death or disability is compensable if it is caused or contributed to by a combination of disease, or a physiological, nervous or psychological condition, and an accident arising out of and in the course of employment. Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127, 134 (1958). Such is not the case in a claim for benefits under the insurance policy here involved.
The mere fact that the present cause of action and the compensation proceeding arose out of the same factual situation does not make a judgment in the latter conclusive as to the different issues involved in the former. Longo v. Reilly, 35 N.J. Super. 405, 409-410 (App. Div. 1955).
I join in the affirmance.