McGIVERN, Appellant and Cross-Appellant, v. AMASA LUMBER Co., and others, Respondents: ROETHE, Defendant and Cross-Appellant: INTERNATIONAL CAPITAL DEVELOPMENT CORP., Defendants.

*No. 768 (1974). Argued January 3, 1977.—Decided April 19, 1977.*
*(Also reported in 252 N. W. 2d 371.)*

---

[4] *See* authorities cited in note 1, supra.
[5] *People v. Coleman,* 120 Cal. Rptr. at 406.

242

For the appellant there were briefs by *Robert L. Wilkins* and *Moertl & Wilkins,* and oral argument by *Robert L. Wilkins,* all of Milwaukee.

For the respondent Joseph J. Meyer there was a brief by *Wayne J. Roper, Edwin F. Bush, Jr.,* and *Gibbs, Roper, Loots & Williams,* and oral argument by *Edwin F. Bush, Jr.,* all of Milwaukee.

ABRAHAMSON, J. Barbara McGivern brought action against five defendants, Joseph J. Meyer, Audrey C. Meyer, Leo W. Roethe, Amasa Lumber Company, and International Capital Development Corporation, on a series of loans to Amasa Lumber Company (hereinafter referred to as Amasa) aggregating $67,000, evidenced by Amasa's note in this amount dated January 1, 1970, carrying interest of 10 percent per annum. Briefly summarized, McGivern alleged that the defendants had made fraudulent representations to her to induce her to continue her loan to Amasa, that the defendants had made fraudulent agreements for the sale of Amasa's stock, concealing the true nature of the agreements from her, and that pursuant to these agreements the defendants had violated their fiduciary duties to her and fraudulently converted the assets of Amasa to their own use. Following a jury trial, McGivern recovered judgment against Amasa Lumber Company on the note and judgment in fraud against Leo W. Roethe. Defendant Roethe has appealed from this judgment; he has failed to file briefs and to pursue his appeal and therefore his appeal is dismissed. McGivern noticed an appeal from the judgment in her favor against Amasa, but has abandoned this appeal, and it, too, is dismissed. Judgment was entered in favor of defendant International Capital

Development Corporation on the ground that the court lacked jurisdiction over the corporation. No appeal was taken from this judgment. Judgments were entered upon a directed verdict in favor of Audrey C. Meyer and upon a verdict of the jury in favor of Joseph J. Meyer. McGivern has appealed from both of these judgments, but has neither briefed nor argued her appeal from the judgment in favor of Audrey Meyer, and this appeal is dismissed. The only appeal that will be decided by this court on the merits is McGivern's appeal from the judgment in favor of Joseph Meyer dismissing her complaint with prejudice.

Two issues are presented by McGivern's appeal:

I. Whether the trial court erred in failing to instruct the jury on strict responsibility for misrepresentation and giving instead an instruction on liability for intentional deceit?

II. Whether the trial court erred in refusing to give requested instructions which defined a fiduciary duty owed by an officer or director of a solvent corporation to a creditor of that corporation?

## I.

In *Stevenson v. Barwineck,* 8 Wis.2d 557, 99 N.W.2d 690 (1959), this court recognized three variants of actions grounded upon misrepresentation: intentional deceit, strict responsibility, and negligence.[1] The jury in this case was instructed upon the intentional deceit theory, Wis. J.I.—Civil No. 2401, and returned a verdict in favor of Joseph Meyer. McGivern does not claim on appeal that the instructions given were erroneous state-

[1] *See also Whipp v. Iverson,* 43 Wis.2d 166, 168–170, 168 N.W.2d 201 (1969); Prosser, *Law of Torts,* sec. 107, p 699 (4th ed. 1971); Harper and McNeely, *A Synthesis of the Law of Misrepresentation,* 22 Minn. L. Rev. 939 (1938).

ments of law, but she claims that the jury should have been instructed on the theory of strict responsibility (Wis. J.I.—Civil No. 2402), and that had the jury been so instructed she probably would have won her case against Meyer.

This court will not consider McGivern's claim of error on the instruction regarding strict responsibility. The record contains absolutely nothing to show that such an instruction was requested at trial. The general rule is that no claim of error can be predicated on failure to give an instruction where the record does not show that a request for the instruction was made to the trial court.[2]

In this case the instruction conference was not reported. The record does contain several requests for instructions submitted by McGivern on the issue of fiduciary duty, but none on strict responsibility for misrepresentation. Nor is there comment by counsel anywhere in the transcript to suggest that such an instruction was ever desired.

Alleged errors in instructions which are not raised on motion for a new trial are generally not reviewable of right on appeal (though this court may consider the issue in its discretion).[3] McGivern's motions for a new trial make no mention of the lack of an instruction on strict responsibility for misrepresentation; the only claim raised with respect to jury instructions was the refusal

---

[2] *Van Wie v. Hill*, 15 Wis.2d 98, 105, 106, 112 N.W.2d 168 (1962); *Venden v. Meisel*, 2 Wis.2d 253, 262, 263, 85 N.W.2d 766 (1957); *Grinley v. Town of Eau Galle*, 274 Wis. 177, 179, 79 N.W.2d 797 (1957). *See* sec. 805.13, Stats.

[3] *Upton v. Tatro*, 68 Wis.2d 562, 574, 229 N.W.2d 691 (1975); *Rowden v. American Family Ins. Co.*, 48 Wis.2d 25, 27, 179 N.W.2d 900 (1970); *Dawson v. Jost*, 35 Wis.2d 644, 649, 151 N.W.2d 717 (1967).

to instruct on fiduciary duty. Accordingly, McGivern's first assignment of error must be rejected.

## II.

Mrs. McGivern requested several jury instructions defining a fiduciary duty purportedly owed by directors and officers of a corporation to the corporation and its creditors. She urges on appeal that the trial court's refusal to give these instructions was error. Under the circumstances of this case we cannot agree.

Briefly stated, the facts relevant to this issue are these: Joseph Meyer was president, director and principal shareholder of the Amasa Lumber Company from its formation as a Wisconsin corporation in 1944 until January 4, 1969. On that date Meyer entered into an agreement with Leo W. Roethe by which Meyer agreed to sell to Roethe all of his stock in Amasa, which was all of the common and two-thirds of the preferred stock outstanding. Roethe agreed to pay for the stock by paying the outstanding balance due on certain bank and individual loans and by paying to Meyer $200,000 in cash according to a specified time schedule. Amasa was not a party to the agreement; the agreement was signed by Roethe individually and by Meyer individually.

The agreement also included the following:

"3. SECOND MORTGAGE Within 10 days after execution of this Agreement, Roethe shall deliver to Meyer a second real estate mortgage and a second chattel mortgage on all assets [of Amasa] on which the Small Business Administration has first mortgages . . . ."

The SBA loan to Amasa was secured by mortgages covering substantially all of the non-inventory tangible assets of Amasa. The second mortgages from Amasa to Meyer called for by the agreement were executed within the ten-day period, signed on behalf of Amasa by Harry

W. Hoffman as Executive Vice President and Leo W. Roethe as Treasurer.

Mrs. McGivern had begun loaning money to Amasa some time prior to 1960, taking a series of notes as evidence of Amasa's obligation to her. At the time Joseph Meyer sold his interest in Amasa the corporation owed McGivern $67,000, which obligation was neither secured by a mortgage nor guaranteed by any person. However, Mrs. McGivern testified that when she inquired as to the safety of her money Joseph Meyer would "personally assure" her that the assets of the corporation were more than enough to assure that she would be paid, that if the lumber mill should be sold or if anything should happen to him she would be paid before he or any other stockholders or creditors were paid, that all of his interest in the corporation was subordinated to her loans, and that she was "what we consider a preferred creditor." Meyer testified that his statements with respect to subordination had gone only to the case of liquidation or sale of assets, not to sale of his stock, that he never had personally guaranteed Mrs. McGivern's loans, and that the phrase "preferred creditor" referred to the fact that she was paid $100 per month over and above the interest called for in the notes (then 6 percent).

Mrs. McGivern was aware in a general way that the sale of Meyer's interest was going forward, and subsequent to the sale Mrs. McGivern negotiated with Hoffman and Roethe and agreed to leave her money with the corporation, at least for a time. However, Amasa eventually went out of business, and McGivern never received any payments on the principal of her loan. The jury found Roethe liable to McGivern for intentional deceit in respect to representations made by him regarding her status as a creditor of Amasa and the true nature of the transaction by which the corporation's stock was sold. The jury found that Meyer had also made misrepresenta-

tions to McGivern, but found that he lacked the intent to deceive requisite to liability. As already indicated, the jury was not instructed with respect to any fiduciary obligations owed by Joseph Meyer, so no findings were made by the jury in this regard.

The role of Joseph Meyer in Amasa's affairs after the signing of the January 4, 1969 purchase agreement is the subject of some dispute. The agreement for the sale of Meyer's stock provided:

"Roethe hereby agrees that so long as the Small Business Administration loan . . . is outstanding and has not been paid in full, Meyer shall remain as a director of Amasa."

Although the sale agreement gave Meyer the right to remain as a director, he testified that he had no standing in the corporation after the January 4, 1969 agreement was signed. He was never notified that he was a director or told anything further about it, he was never notified of any meetings or consulted on company business, he never voted on any matters, he never acted as an officer or executed any document as such after the sale. There is little if any credible evidence in the record to dispute Meyer's testimony in this regard, and there is considerable evidence that after January 4, 1969, Meyer did not serve Amasa as director, officer or otherwise.

Amasa ceased doing business in June of 1971. However, there was no evidence as to when, if ever, Amasa became insolvent. In any event, the evidence was uncontradicted to the effect that during the period of Joseph Meyer's ownership, Amasa was a solvent and going concern.

Among the jury instructions requested by McGivern but refused by the trial court are the following:

"You are instructed that an officer or director of a corporation occupies a position of trust and confidence

with respect to the corporation and its creditors, and is under an obligation to exercise good faith, reasonable diligence, and standard skill in the performance of his duties to the corporation and its creditors. These obligations compel him to discharge his duties with absolute fidelity and loyalty to the interests of the corporation and its creditors; to keep the corporation and its creditors informed with respect to, and to make full disclosure to them of, all material facts that affect the subject of his duty; in all respects, to discharge faithfully his duties, so as to protect and serve the best interests of the corporation and its creditors.

"You are instructed that a breach of the fiduciary duty owed by corporate officers and directors to corporate creditors which causes a loss of corporate assets to the damage of creditors, makes the officers or directors personally liable to the creditors for the loss.

"You are instructed that where an officer or director of a corporation acts for his own interest in a transaction involving the property of the corporation, and corporate assets are thereby lost to the creditors of the corporation as a result of the self-dealing of the officer or director, this officer or director is then personally liable to the corporate creditors for the loss."

From McGivern's requested jury instructions and her brief it is apparent that McGivern bases her claim of a fiduciary relationship on Meyer's position as director and officer of Amasa Lumber Company and her position as a creditor of Amasa. She takes the position that this duty was breached when Meyer accepted a second mortgage on corporate assets to secure Roethe's personal indebtedness to him for the purchase price of the Amasa stock, and that Meyer is therefore liable to her as a creditor for the assets thereby lost. It is conceded that Meyer was a director and president of the corporation on the date of the agreement between Roethe and Meyer for the sale of Meyer's stock in Amasa. Meyer, as existing president and director, and Roethe, as future officer and director, both participated in causing Amasa's assets to be mortgaged to secure Roethe's debt.

This court has often recognized that directors and officers of corporations occupy fiduciary positions and are held to strict rules of honesty and fair dealing between themselves and their corporations. If they violate their fiduciary duty they are liable.[4] The mortgaging of corporate assets to secure a personal obligation of a shareholder would, without additional factors, violate the fiduciary duty of the directors and officers involved.[5] However, these general principles as to the

[4] *Rose v. Schantz*, 56 Wis.2d 222, 228, 201 N.W.2d 593 (1972); *Stoiber v. Miller Brewing Co.*, 257 Wis. 13, 42 N.W.2d 144 (1950); *Davies v. Meisenheimer*, 254 Wis. 419, 37 N.W.2d 93 (1949); *Federal Mortgage Co. v. Simes*, 210 Wis. 139, 245 N.W. 169 (1933). See also secs. 180.40 and 286.21, Stats.; 3 Fletcher, *Cyclopedias Corporations*, secs. 850, 913, *et seq.* (1975 revd. ed.); Feuer, *Personal Liabilities of Corporate Officers & Directors*, c. 3, 4 (2d ed. 1974); Henn, *Law of Corporations*, pp. 459–483 (2d ed. 1970).

See also Annot., *Liability of corporate directors for negligence in permitting mismanagement or defalcations by officers or employes*, 25 A.L.R.3d 941 (1969).

[5] See Annot. *Validity of Obligation Given by Corporation Incident to Purchase of Entire Stock by Sole Shareholder*, 71 A.L.R.3d 639 (1976).

Sec. 180.40, Stats., sets forth the liability of officers and directors in addition to other liability imposed by law:

"Liability of directors and shareholders. (1) In addition to any other liabilities imposed by law upon directors of a corporation:

"(a) Directors of a corporation who vote for or assent to the declaration of any dividend or other distribution of the assets of a corporation to its shareholders contrary to the provisions of this chapter or contrary to any restrictions contained in the articles of incorporation shall be jointly and severally liable to the corporation for the amount of such dividend which is paid or the value of such assets which are distributed in excess of the amount of such dividend or distribution which could have been paid or distributed without a violation of the provisions of this chapter or the restrictions in the articles of incorporation.

"(b) Directors of a corporation who vote for or assent to the purchase of its own shares contrary to the provisions of this chapter or contrary to any restrictions contained in the articles

duties of fiduciaries only begin the analysis. We must ask to whom does the officer or director owe obligations as a fiduciary. Although some have viewed officers and directors of a solvent corporation as trustees or agents for creditors of the corporation, this court has not adopted this view:

"The question is, then, what is the relation that the director of a corporation bears to the creditor? Some courts refer to the relationship as one similar to that of trustee and cestui que trust, and, on that basis, allow the creditors to proceed directly against the director. Other courts hold that the directors are agents or representatives of the corporation only, and bear the same relation to the creditors of the corporation as an agent of any individual bears to the creditors of the individual. The cases following this theory hold that the creditors of the corporation are strangers to the obligations of the directors to the corporation and that no direct right of action exists unless there was actual fraud or deceit. The former view is criticized by one court as follows:
" 'There are numerous cases where the distinction has not been clearly recognized, if at all, between a wrong

of incorporation shall be jointly and severally liable to the corporation for the amount of consideration paid for such shares which is in excess of the maximum amount which could have been paid therefor, without a violation of the provisions of this chapter or any restrictions in the articles of incorporation.

"(c) Directors of a corporation who vote for or assent to any distribution of assets of a corporation to its shareholders during the liquidation of the corporation without the payment and discharge of, or making adequate provision for, all known debts, obligations, and liabilities of the corporation shall be jointly and severally liable to the corporation for the value of such assets which are distributed, to the extent that such debts, obligations and liabilities of the corporation are not thereafter paid, discharged or barred by statute.

"(d) Directors of a corporation who vote for or assent to the making of a loan to an officer or director of the corporation shall be jointly and severally liable to the corporation for the amount of such loan until the repayment thereof, unless such directors shall sustain the burden of proof that such loan was made for a proper business purpose."

to a depositor of a bank committed by its officers, for which they are personally liable directly to such depositor on the ground of deceit, and a wrong by such officer to the corporation for which they are liable to such corporation and through it to the creditors.' [*Killen v. State Bank of Manitowoc*, 106 Wis. 546, 563, 564, 82 N.W. 536 (1900).]

"On principle it would seem that creditors should have not direct right of action against the directors personally. The directors occupy a fiduciary relation to the corporation demanding care, vigilance, and good faith. If they violate their duty, they at once become responsible to the corporation. 'It is difficult to perceive upon what principle a director of a corporation can be considered a trustee of its creditors. He is selected by the shareholders, not by creditors; he has no contractual relation with the latter; he represents a distinct entity, the corporation; and his relation to its creditors is exactly the same as the agent of an individual bears to creditors of such individual.' Directors are trustees in the sense that every agent is a trustee for his principal, and are bound to exercise diligence and good faith, but they are not strict trustees." (Footnotes omitted.) [6]

McGivern relies on *Haywood v. Lincoln Lumber Co.*, 64 Wis. 639, 26 N.W. 184 (1885), in which the officers and directors of a corporation caused it to give them a mortgage on corporate property to secure their claims against the corporation at a time when it was insolvent. The court said, at p. 646:

". . . In such case, the authorities seem to be uniform that the directors and officers of the corporation are trustees of the creditors, and must manage its property and assets with strict regard to their interests; and, if they are themselves creditors, while the insolvent corporation is under their management they cannot secure to themselves any preference or advantage over other creditors. The directors are then trustees of all the property of the corporation for all of its creditors, and an equal distribution must be made, and no preference to any one of the creditors, and much less to the directors or trustees, as such."

[6] Comment, 20 Calif. L. Rev. 426, 430, 431 (1932).

The court might have rested here, but it continued (p. 647):

"But there is another principle equally unquestionable which renders the mortgage in suit void. The directors and officers made the mortgage, or directly caused it to be made, to themselves. They occupied a fiduciary relation to the corporation, its stockholders, and its creditors, and they had no right to use such relation and their official position for their own benefit, to the injury of others in equal right."

Some of the language in *Haywood* may appear to support the existence of some type of fiduciary relationship between corporate directors and creditors generally, regardless of solvency or insolvency of the corporation. However, the court did not define the nature of the relationship. And the facts of the case indicate the court did not intend to recognize a fiduciary duty to a single creditor or the right of a single creditor to sue a director for breach of such duty. The *Haywood Case* involved a dispute between the officers and directors of the corporation and a receiver for the corporation appointed by the court, not a single creditor of the corporation. Decisions after *Haywood* have moved away from the concept of a director's fiduciary duty to creditors except perhaps where the corporation was insolvent and no longer a going concern. *Killen v. Barnes,* 106 Wis. 546, 564, 82 N.W. 536 (1900); *Boyd v. Mutual Fire Ass'n,* 116 Wis. 155, 181, 90 N.W. 1086 (1903); *Schmitz v. Wisconsin Soap Mfg. Co.,* 204 Wis. 149, 154, 155, 235 N.W. 409 (1931). As indicated above, Amasa Lumber Company was a solvent and going concern until well after Joseph Meyer's connection with the corporation was severed.

There is an additional difficulty with McGivern's position here. Even where it could be said that in some sense

a fiduciary obligation existed to creditors generally, the issue remains as to who has the right to sue for losses due to the breach of duty.[7] Our prior cases treat the cause of action as an asset of the corporation, or the receiver or trustee thereof. An action may be maintained only in the right of such corporation for the benefit of persons entitled to participate in the distribution of assets.[8] This court has set forth the rights and liabilities of the parties as follows:

[7] "Suppose the creditor finds no breach of a duty owed directly to him, but can show that a director or officer has violated a duty to the corporation . . . [C]an the bond holder recover from the officer-directors on a theory that a violation of a duty to the corporation is necessarily a violation of a duty to him? The black-letter agency answer is no. 'An agent is not liable for harm to a person other than his principal because of . . . [the agent's] failure adequately to perform his duties to his principal, unless physical harm results from reliance upon performance of the duties by the agent, or unless the agent has taken control of land or other tangible things'. Restatement (Second) of Agency sec. 352 (1958). . . .

". . .

"Where, however, an officer, director, or employee has violated a duty to the corporation, the creditor benefits (if only by an increase in his margin of security) when the corporation's cause of action is successfully asserted. Assertion may be *by* the corporation—that is, be authorized by the board. If the potential defendants dominate the board and action by the corporation is thus never authorized, assertion *on behalf of* the corporation may be had in many cases through a shareholders derivative action . . . . Furthermore, receivers and trustees in bankruptcy often assert causes of action on the corporation's behalf. . . ." Cary, *Corporations, Cases & Materials,* 865–867 (4th ed. 1969).

[8] *Killen v. Barnes,* 106 Wis. 546, 562, 564, 572, 82 N.W. 536 (1900); *Gores v. Day,* 99 Wis. 276, 74 N.W. 787 (1898); *Gores v. Field,* 109 Wis. 408, 415, 84 N.W. 867, 85 N.W. 411 (1901); *Boyd v. Mutual Fire Assn.,* 116 Wis. 155, 181, 90 N.W. 1086 (1903); *Williams v. Brewster,* 117 Wis. 370, 93 N.W. 479 (1903); *Cream City M.P. Co. v. Coggeshall,* 142 Wis. 651, 126 N.W. 44 (1910); *Slack v. Northwestern National Bank of Superior,* 103 Wis. 57, 64, 65, 79 N.W. 51 (1899); *Schmitz v. Wisconsin Soap*

"Directors are liable to be charged as trustees of property fraudulently misapplied or wasted by them, independent of any statute on the subject, but the duty of enforcing such liability is in the managing officers of the corporation, though it may be performed by stockholders, or creditors, or possibly the assignee, or successor of the corporation, when the circumstances are such as to make that necessary, independent of any statute on the subject. Sec. 3237, R. S. 1878 [now sec. 286.32] does not materially add to the jurisdiction of the court; that existed under its general equity powers." *Gores v. Day,* 99 Wis. 278, 280, 74 N.W. 787 (1898).

We have viewed sec. 286.32, Stats.,[9] as largely declarative of equitable jurisdiction. An action by a creditor

---

*Mfg. Co.,* 204 Wis. 149, 154, 155, 235 N.W. 409 (1931). *See also* 3A Fletcher, *Cyclopedia Corporations,* sec. 1180 *et seq.* (1975 rev. ed.).

*Cf. Equitable Life & Casualty Ins. Co. v. Inland Printing Co.,* 26 Utah2d 19, 484 P2d 162 (1971); *Sutton v. Reagan & Gee,* 405 S.W.2d 828 (Tex. Civ. App. 1966).

[9] Sec. 286.32, Stats., provides in part as follows:

"Jurisdiction. Courts shall have jurisdiction over directors, managers, trustees and other officers of corporations:

"(1) To compel them to account for their official conduct in the management and disposition of the funds and property committed to their charge.

"(2) To order and compel payment by them to the corporation whom they represent and to its creditors of all sums of money and of the value of all property which they may have acquired to themselves or transferred to others, or may have lost or wasted by any violation of their duties as such directors, managers, trustees or other officers.

". . .

"(7) To set aside all alienations of property made by the directors, trustees or other officers of any corporation contrary to the provisions of law or for purposes foreign to the lawful business and objects of such corporation, in cases where the person receiving such alienation knew the purposes for which it was made; and . . . ."

Sec. 286.325, Stats., further provides:

"Action to exercise jurisdiction. The jurisdiction conferred by s. 286.32 shall be exercised in an action prosecuted by the attorney

under this statute or under the general equitable powers of the court is brought on behalf of the corporation for the benefit of all of its creditors, any amounts recovered to be restored to the corporation or to such assignee or other person who has a right thereto in lieu of the corporation.[10] *Gores v. Day,* 99 Wis. 276, 279, 280, 74 N.W. 787 (1898); *Killen v. Barnes,* 106 Wis. 546, 572–574, 82 N.W. 536 (1900). If the directors' breach of their duties has caused a loss to the corporation, the liability of the directors is deemed to be an asset of the corpora-

---

general in the name of the state, or by any creditor or stockholder of the corporation, or by any director, trustee or officer thereof having a general superintendence of its concerns."

Sec. 286.18, Stats., provides:

"Action to charge officers and stockholders; remedies not exclusive. When a creditor of a corporation seeks to charge directors, trustees or other officers or stockholders thereof on account of any liability created by law he may commence and maintain an action for that purpose and may join the corporation. No remedy given in this chapter shall preclude the enforcement of any liability herein mentioned in an additional action if there are parties or property that cannot be reached by the first action or judgment."

[10] If the directors were liable for all corporate debts so that one creditor may collect and will not reduce the amount which another may recover then each creditor could sue individually. But where the director's liability may be for a limited amount and where there may be a common fund for all to share, a suit in the nature of a bill in equity bringing in all interested parties must be resorted to. *Patterson v. Minnesota Mfg. Co.,* 41 Minn. 84, 42 N.W. 926 (1889).

An action on behalf of all creditors avoids multiplicity of suits and provides an orderly procedure by which relief can be obtained for all aggrieved creditors rather than the lucky few who prosecute first. *Hi-Pro Fish Products, Inc. v. McClure,* 224 F. Supp. 485, 491 (E.D. Ark. 1963). *See also Piechowski v. Matarese,* 54 N.J. Super. 549, 149 A.2d 632 (1959); Annot., *Right of creditor of corporation to maintain personal action against directors or officers for mismanagement,* 50 A.L.R. 462 (1927).

tion.[11] It is only if the creditor suffers a single and exclusive injury resulting from a direct tort of the director or officer that the creditor, in his or her own right, may sue the director or officer.[12]

[11] The question of whether a suit against a director under sec. 180.40, Stats., quoted at note 5, may be brought by a creditor raises issues similar to the ones raised in this case. Professor Cary comments as follows:

"*Statutory Liabilities*

"Modern corporation acts often contain a section labelled 'Liability of Directors in Certain Cases', collating several liabilities scattered throughout the statute. See for example Model Act sec. 43; New York sec. 719 [sec. 180.40, Stats.]. Most of these provisions are primarily intended to protect creditors against dissipation of the corporation's assets, and they typically prescribe liability for: (1) the declaration of dividends from a source not permitted by law . . . ; (2) purchase by the company of its own shares from a source not permitted by law . . . ; (3) making an unauthorized loan to a director or officer, or (in a few states) a shareholder; (4) distribution of corporate assets on dissolution without adequately providing for all known liabilities. . . .

". . .

"Problems remain under some statutes in determining the extent of the liability and the persons who may enforce it. Is liability limited to the amount of the loan, or is it measured by the claims of creditors who advanced money to the corporation while the unauthorized loan was outstanding? May an individual creditor sue to enforce the liability or is the right of action vested in the corporation? Compare American Broadcasting-Paramount Theatres, Inc. v. Frye, 8 N.Y.2d 232, 168 N.E.2d 669, 203 N.Y.S.2d 850 (1960) with Piechowski v. Matarese, 54 N.J. Super. 549, 149 A.2d 632 (Law Div. 1959). Statutory solutions vary, but the majority apparently limit liability to the amount of the unauthorized loan, plus interest, and vest the right of action in the corporation or those suing in its behalf. See Model Act sec. 43; 2 Model Business Corporation Act Annotated sec. 43, para. 2.02 (4)(b) (1960); New York secs. 719, 720." Cary, *Corporations, Cases & Materials* (4th ed. 1969), 865–867.

See also Baker & Cary, *Corporations, Cases & Materials* (3d ed. 1959), 592–598.

[12] *Killen v. Barnes*, 106 Wis. 546, 558–563, 82 N.W. 536 (1900); *Gores v. Field*, 109 Wis. 408, 412, 84 N.W. 867, 85 N.W. 411

This view is in keeping with this court's cases involving suits by shareholders. Although Wisconsin law has long recognized that directors and officers owe a fiduciary duty to and are trustees for the individual shareholders (as well as the corporation),[13] this court has said that where the breach of this duty constitutes a primary and direct injury to the corporation and only a secondary injury to shareholders, any remedial action by a shareholder must be taken for the benefit of the corporation; the shareholder has no individual right of action.[14] It is only if a shareholder's individual rights are being violated that the shareholder can sue on his or her own behalf.[15]

McGivern was suing on her own behalf—not on behalf of Amasa or the creditors. Her cause of action against Meyer and Roethe for deceit in inducing her to remain a creditor of Amasa was personal to her, and was properly asserted in this case. However, her attempt to hold Meyer liable to her as a fiduciary must fail. McGivern claims that a general fiduciary obligation is owed by the directors and officers of a solvent corporation to each creditor personally. No such personal duty exists. The instructions requested by McGivern were not correct statements of the law applicable to the case and were properly refused by the trial court.

(1901); Ballantine on Corporations, pp. 185–186 (1946); Uhlman, *The Legal Status of Corporate Directors,* 19 Boston U.L. Rev. 12, 23–28 (1939).

[13] *Grognet v. Fox Valley Trucking Serv.,* 45 Wis.2d 235, 241, 242, 172 N.W.2d 812 (1969); *Timme v. Kopmeier,* 162 Wis. 571, 575, 156 N.W. 961 (1916).

[14] *Rose v. Schantz,* 56 Wis.2d 222, 229, 201 N.W.2d 593 (1972); *Cf. Kruse v. Schieve,* 61 Wis.2d 421, 426, 213 N.W.2d 64 (1973).

[15] *Rose v. Schantz,* 56 Wis.2d 222, 229, 201 N.W.2d 593 (1972); *Marshfield Clinic v. Dodge,* 269 Wis. 519, 526, 69 N.W.2d 558 (1955). *See also* 13 Fletcher, *Cyclopedia Corporations,* sec. 5921 et seq. (1970 rev. ed.).

*By the Court.*—The judgment in favor of Joseph J. Meyer is affirmed. The appeals from the judgment in favor of Audrey C. Meyer, the judgment in favor of Barbara J. McGivern against Leo W. Roethe, and the judgment in favor of Barbara McGivern against Amasa Lumber Company, Inc., are dismissed.