Charles E. **BURROUGHS,** Trustee in Bankruptcy of Hearthside Homes, Inc., bankrupt, Plaintiff-Appellant,

v.

Robert J. **FIELDS,** Defendant-Appellee.

No. 75–1648.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1976.

Decided Nov. 18, 1976.

R. Arthur Ludwig, John G. Persa, Milwaukee, Wis., for plaintiff-appellant.

Terry D. Teper, Milwaukee, Wis., for defendant-appellee.

Before FAIRCHILD, Chief Judge, BAUER, Circuit Judge, and PARSONS, Chief District Judge.*

PARSONS, Chief District Judge.

This case concerns the attempt by the appellant-trustee in bankruptcy to set aside a transfer of funds from the bankrupt to the defendant-appellee. Trustee contends that the transfer constitutes a fraudulent

* Chief Judge James B. Parsons of the United States District Court for the Northern District of Illinois is sitting by designation.

conveyance under sections 67(d)(2)(a), 67(d)(2)(d) and 70(e)(1) [1] of the Bankruptcy Act. The district court dismissed the action. For the reasons stated below, we reverse.

The bankrupt, Hearthside Homes, Inc., was incorporated in April 1971. Appellee Fields, one of the incorporators and stockholders, served as President, Director and Managing Officer. In addition to drawing a weekly salary, he received commissions for securing construction agreements.

On February 25, 1972, Fields caused Hearthside Homes to issue two checks totaling $4,000. Fields signed the checks on behalf of Hearthside Homes and made the checks payable to himself as compensation for commissions due to him. On February 29, 1972, appellee informed corporate Vice-President Joan Stevens by letter that he had paid himself the commission. On that same day, by a separate letter to the Vice-President, he resigned as President and Chairman of the Board.

On June 26, 1972, an involuntary petition in bankruptcy was filed against Hearthside Homes. This action was commenced by the trustee in bankruptcy on July 19, 1973 seeking restitution of the $4,000 to the bankrupt's estate. The district court based its holding in Fields' favor in large measure upon the proposition that Fields was merely a "figurehead" officer or director.

■ Under Wisconsin law only one class of officers and directors is recognized. Wis. Stat. chs. 180.30, 180.41. To allow a corporate officer or director to escape his fiduciary duties by claiming that he was a mere "figurehead" would in effect create a second class of officers and directors not provided for by Wisconsin statutes. Appellee's claim that he was merely a figurehead is therefore without legal significance and does not relieve him of the responsibilities of his corporate offices. See *Golden Rod Mining Co. v. Bukvich*, 108 Mont. 569, 92 P.2d 316 (1939).

Section 70(e)(1) of the Bankruptcy Act provides that:

"A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor."

■ Under the common law of Wisconsin, corporate officers and directors are charged with certain fiduciary duties. The Wisconsin Supreme Court stated one of the duties as follows:

" . . . when a corporation ceases to be a going institution, or its business is in such shape that its directors know, or ought to know, that suspension is impending . . . its assets in the hands of such directors become, by equitable conversion, a trust fund for the benefit of its general creditors, so that, if such directors prefer themselves over such general creditors, such action constitutes a fraud in law, and equity will compel them to make restitution of all property thereby diverted to their personal benefit to the prejudice of such creditors."

*Hinz v. Van Dusen*, 95 Wis. 503, 508, 70 N.W. 657, 659 (1897). The continuing vitality of the duty stated in the *Hinz* decision was recently confirmed in *Malloy v. Korf*, 352 F.Supp. 569, 571–72 (E.D.Wis.1972). Appellee's payment of a commission to himself, at a time when he knew or should have known the condition of the corporation, is just the type of fraudulent preference condemned by Wisconsin state common law. As such, the trustee may recover the $4,000 under section 70(e)(1). See 4A Collier on Bankruptcy § 70.78. (The payment would also be voidable as a fraudulent conveyance under sections 242.03 and 242.04, Wis.Stats., given the same construction hereinafter given to section 67(d)(2)(a) of the Bankruptcy Act.)

■ In the alternative, section 67(d)(2)(a) enables the trustee to void a transaction for constructive fraud without regard to the

---

1. 11 U.S.C. § 107(d)(2)(a); 11 U.S.C. § 107(d)(2)(d) and 11 U.S.C. § 110(e)(1).

existence of actual intent to defraud. In order to void a transfer under this section, the trustee must show that: (1) it occurred within one year of the filing of the petition for bankruptcy; (2) a creditor existed at the time of the transfer; (3) the debtor was insolvent or would thereby be rendered insolvent by the transfer; (4) the transfer was made without fair consideration.[2] No serious opposition can be raised that conditions one through three have not been fulfilled.[3] Fair consideration therefore remains the only condition at issue.

■ Section 67(d)(1)(e) defines consideration as fair "when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied . . .." See 4 Collier on Bankruptcy § 67.33 at 506 n.5 and the cases cited therein. No controversy exists over the fact that the $4,000 taken by Fields was the fair equivalent of the commissions owing to him. Good faith, however, was lacking. In *Ballard v. Aluminum Company of America*, 468 F.2d 11 (7th Cir. 1972), the court held that " . . . the question of good faith depends under the circumstances on whether the 'transaction carries the earmarks of an arms-length bargain'." Appellee Fields as President and Chairman of the Board was charged with knowing the financial condition of his corporation. His legal power to control the affairs of the corporation enabled him to write checks to himself and thus to prefer himself over other creditors of the corporation. Such a relationship with the corporation makes the transfer of the $4,000 the antithesis of an arms-length transaction and constitutes a fraudulent conveyance under section 67(d)(2)(a). See *Inland Security Co. v. Estate of Kirshner*, 382 F.Supp. 338, 348–50 (W.D.Mo.1974).

In view of the fact that this court has found two separate grounds for reversal, we need not consider the question of actual intent to defraud under section 67(d)(2)(d).

REVERSED.

---

**2.** § 67(d)(2): "Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent . . .."

**3.** The record clearly indicates that the bankrupt was insolvent on February 29, 1972. We find nothing in the record to dissuade us from the conclusion that the corporation was also insolvent four days earlier on February 25, 1972— the day of the transfer. See *Inland Security Co. v. Estate of Kirshner*, 382 F.Supp. 338, 344–45 (W.D.Mo.1974).