BELOIT LIQUIDATING TRUST, a Delaware Trust,
Plaintiff-Appellant,

v.

Jeffrey T. GRADE, Francis M. Corby, Jr., Mark E.
Readinger, James A. Chokey, Robert A. Messier,
Alton L. Daffin, and Thomas E. Engelsman,
Defendants-Respondents.†

Court of Appeals

*No. 02–2035. Oral argument June 3, 2003.—
Decided July 1, 2003.*

2003 WI App 176

(Also reported in 669 N.W.2d 232.)

† Petition to review granted 10-21-03.

389

391

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *John F. Hovel, Leonard G. Leverson*, and *Joseph S. Goode* of *Kravit, Gass, Hovel & Leitner, S.C.*, Milwaukee, and *Curtis C. Mechling* of *Stroock & Stroock & Lavan LLP*, New York, New York. There was oral argument by *Curtis C. Mechling*.

On behalf of the defendants-respondents, James A Chokey, Mark E. Readinger, Robert A. Messier, and Alton L. Daffin, the cause was submitted on the briefs of *Paul F. Linn, Christopher C. Mohrman* and *Charles J.*

*Crueger* of *Michael Best & Friedrich LLP*, Milwaukee.
There was oral argument by *Paul F. Linn*.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. FINE, J. Beloit Liquidating Trust is the transferee of the assets of Beloit Corporation, following the latter's liquidation under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101–1174. The Trust appeals from an order dismissing its supplemental complaint against seven persons whom the supplemental complaint alleges were, during the time material to this appeal, officers or directors of Beloit Corporation or Harnischfeger Industries, Inc., which was Beloit Corporation's eighty-percent controlling shareholder.[1] As material to this appeal, the supplemental complaint alleged that the defendants breached

---

[1] The defendants are:

• Jeffrey T. Grade, an Illinois resident, whom the supplemental complaint alleges was, from 1993 until 1999, "a Director and the Chairman of Beloit [Corporation] and a Director and the Chairman and Chief Executive Officer of" Harnischfeger;

• Francis M. Corby, Jr., an Illinois resident, whom the supplemental complaint alleges was, from 1994 until 1999, "Executive Vice President for Finance and Administration" of Harnischfeger, and, from 1996 to 1999, a director of Harnischfeger;

• Mark E. Readinger, an Illinois resident, whom the supplemental complaint alleges was, from January 1998 until 2001, "a Director and the President and Chief Operating Officer of Beloit" Corporation, and, from 1997 until 2001, "Senior Vice President" of Harnischfeger;

• James A. Chokey, a Wisconsin resident. The supplemental complaint alleges that "[f]rom 1997 to the present, Chokey has served as Executive Vice President for Law and Government affairs" of Harnischfeger, and that "[f]rom 1996 until 1997, Chokey was the Senior Vice President, Law and Corporate Development of Beloit" Corporation;

their fiduciary duties to both Beloit Corporation and its creditors, and that the defendants wasted the assets of Beloit Corporation. The circuit court held that the claims asserted on behalf of Beloit Corporation were barred by the two-year statute of limitations for intentional torts, Wis. Stat. § 893.57, and that the two-year extension provided for by 11 U.S.C. § 108(a) did not apply.[2] Further, the circuit court held that the defen-

- Thomas E. Engelsman, an Oklahoma resident, whom the supplemental complaint alleges was, from 1994 until February of 1998, "a Director and the President and Chief Operating Officer of Beloit" Corporation, and from 1997 until February of 1998, "was a Senior Vice President" of Harnischfeger;

- Robert A. Messier, an Illinois resident, whom the supplemental complaint alleges was, from 1992 until 2000, "a Director and the Vice President, Chief Financial Officer, and General Auditor of Beloit" Corporation; and

- Alton L. Daffin, a Texas resident, whom the supplemental complaint alleges was, from 1998 to 2000, "a Director and the Senior Vice President and Controller of Beloit" Corporation.

Only Chokey, Readinger, Messier, and Daffin have filed briefs on this appeal.

[2] Wisconsin Stat. § 893.57 provides: "An action to recover damages for libel, slander, assault, battery, invasion of privacy, false imprisonment or other intentional tort to the person shall be commenced within 2 years after the cause of action accrues or be barred."

U.S.C. § 108(a) provides:

If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

dants owed no duty to Beloit Corporation's creditors.[3] We reverse and remand for further proceedings.

## I.

¶ 2. Although the facts underlying this case are complex, those material to our decision are relatively simple. As noted, this appeal comes to us from the circuit court's order dismissing the Trust's supplemental complaint. Thus, we take as true the facts alleged in that supplemental complaint and the various documents referred to therein, and apply the rule that a complaint "should be dismissed as legally insufficient only if 'it is quite clear that under no conditions can the plaintiff recover.' " *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 731, 275 N.W.2d 660, 664 (1979) (quoted source omitted). We also take judicial notice of the bankruptcy proceedings that underlie this appeal. *See* Wis. Stat. Rule 902.01. We review *de novo* the circuit court's decision to dismiss a complaint for failure to state claims. *Heinritz v. Lawrence Univ.*, 194 Wis. 2d 606, 610, 535 N.W.2d 81, 83 (Ct. App. 1995).

¶ 3. Before 1996, Beloit Corporation was, according to the supplemental complaint, "one of the premier manufacturers of pulp and papermaking equipment" in the world. As its name might suggest, its primary place of business for most of its existence was Beloit, Wisconsin. Beloit Corporation "also operated 65 partially or wholly-owned subsidiaries, including foreign subsidiar-

---

(2) two years after the order for relief.

[3] The circuit court dismissed the supplemental complaint's first, second, and third claims for relief; the parties stipulated to the dismissal of the two remaining claims.

ies in Asia, Italy, Poland, the United Kingdom, and Austria." During at least part of the time material to this appeal, the corporate headquarters of Beloit Corporation was in Illinois. Beloit Corporation was incorporated under the laws of Delaware, as was Harnischfeger.

¶ 4. The Trust's supplemental complaint alleges that Beloit Corporation "was continuously insolvent from as early as 1996." On June 7, 1999, Beloit Corporation and Harnischfeger filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. By order dated May 18, 2001, the bankruptcy court confirmed the Debtors' Third Amended Joint Plan of Reorganization, which encompassed Harnischfeger and its fifty-seven affiliates, including Beloit Corporation. According to the notice of entry of the confirmation order, the confirmation order "became effective" on July 12, 2001.

¶ 5. During the time Beloit Corporation, Harnischfeger, and their creditors were attempting to resolve the issues presented by the Chapter 11 filings, Beloit Corporation and Harnischfeger operated as debtors in possession. On May 12, 2000, the United States Trustee for the District of Delaware under the authority granted by 11 U.S.C. § 1102 appointed an Official Committee of Unsecured Creditors of Beloit Corporation to, as the bankruptcy court recounted in a subsequent order, explore "potential intercompany issues and possible conflicts of interest between various Debtors and related parties." *See* 11 U.S.C. § 1103(c)(2) (committee may "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter rel-

evant to the case or to the formulation of a plan"). One year after its appointment by the trustee, the Committee of Unsecured Creditors sought from the bankruptcy court an order authorizing the Committee to sue "on behalf and in the name of Beloit Corporation" "current and former officers and directors of" Beloit Corporation and Harnischfeger, alleging that the Committee's "investigation has uncovered an appalling record of corporate waste, mismanagement and breach of fiduciary duty by" those management officials.

¶ 6. By order dated June 5, 2001, the bankruptcy court granted the Committee's motion, noting that "no objection to such Motion" was filed by any party even though there was "due and sufficient notice of such Motion." The bankruptcy court determined that it was "within this Court's authority to vest the [Committee of Unsecured Creditors] with the right to prosecute such claims . . . in the name and on behalf of Beloit [Corporation]," and that "the two-year extension of statutes of limitations provided by § 108 . . . of the Bankruptcy Code may arguably expire as early as June 7, 2001, the second anniversary of the entry of the first order for relief in these bankruptcy cases." The bankruptcy court also determined:

- Under the Settlement Agreement between the parties "as incorporated in the Debtors' Third Amended Plan of Reorganization," both Beloit Corporation and the Committee of Unsecured Creditors "expressly retain the right to assert any claims that Beloit [Corporation] may have against (i) any current or former officers or directors of Beloit [Corporation] arising out of or connected with such person's role as an officer or director of Beloit [Corporation], and (ii) any person who was not a director of [Harnischfeger] on the Petition Date and who was at

399

any time an officer of [Harnischfeger]"; and

- "[R]epresentatives of the Debtors advised counsel for the [Committee of Unsecured Creditors] that the Debtors do not believe there are meritorious claims" against the officers or directors, "and therefore are unwilling to prosecute any such claims."

The bankruptcy court ordered:

- "Before the Plan's Effective Date, the [Committee of Unsecured Creditors] is hereby authorized to commence actions . . . in the name of and on behalf of Beloit [Corporation] against," with exceptions not material here, current or former officers or directors of Beloit Corporation and Harnischfeger;

- "After the Plan's Effective Date, the authority granted the [Committee of Unsecured Creditors] hereunder shall be deemed transferred to the Plan Administrator [of the Liquidating Trust] as specified in the Plan"; and

- "Nothing contained in this Order shall be deemed an admission of liability by the Debtors or any of their current or former officers or directors . . . nor impair any defenses, offsets or counterclaims such parties may have."

¶ 7. The Committee of Unsecured Creditors filed its complaint against the defendants on the same day as the bankruptcy court entered its order permitting the suit, June 5, 2001. The June 5 complaint alleged that Beloit Corporation was the "plaintiff" and that "the Committee was vested with the power to bring this action in the name of and on behalf of Beloit" Corpora-

tion. The complaint further noted that "[i]t is antici-pated that, shortly after the effective date of the Plan and pursuant to the powers vested in it by the Plan, the Beloit Liquidating Trust will be substituted as plaintiff herein and will assume the prosecution of this action for the benefit of the beneficiaries of the Beloit Liqui-dating Trust."

¶ 8. As noted, the Plan was confirmed by the bankruptcy-court order dated May 18, 2001, but did not become effective until July 12, 2001. On November 8, 2001, the Trust, "acting by and through its Plan Ad-ministrator," filed the supplemental complaint, as envi-sioned by both the bankruptcy court's June 5, 2001, order and the Committee's June 5, 2001, original com-plaint.

## II.

A. *Statute of Limitations.*

¶ 9. As we have seen, the circuit court dismissed the Trust's claims asserted on behalf of Beloit Corpora-tion because it concluded that the two-year statute of limitations for intentional torts expired before June 5, 2001, and was not extended by 11 U.S.C. § 108(a). The parties dispute which statute of limitations governs, and, also, whether the discovery rule first recognized in Wisconsin by *Hansen v. A.H. Robins, Co.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578, 583 (1983) ("tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first"), saves the claims. We need not decide these matters, however, because the supplemental complaint alleges that all or some of the defendants did things upon which the Trust bases its claims within two years preceding the June 7, 1999, bankruptcy filing date. We

401

must, as noted, accept these allegations as true. *Morgan*, 87 Wis. 2d at 731, 275 N.W.2d at 664. Although the defendants contend that the supplemental complaint also alleges breaches of fiduciary duty as early as 1996, we must—at this dismissal-of-the-complaint stage—resolve competing inferences that may be drawn from the supplemental complaint in the Trust's favor. *See Delmore v. American Family Mut. Ins. Co.*, 118 Wis. 2d 510, 516, 348 N.W.2d 151, 154 (1984) (summary judgment). Accordingly, we do not decide whether the circuit court was correct in concluding that the two-year intentional-tort statute of limitations applies to the Trust's claims against the defendants, or whether the discovery rule can be invoked.

¶ 10. When Beloit Corporation and Harnischfeger filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, "an estate" was created that was "comprised of," *inter alia,* "all legal or equitable interests of the debtor[s] [Beloit Corporation and Harnischfeger] in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This "estate" includes the claims the Trust asserts here. *Delgado Oil Co. v. Torres*, 785 F.2d 857, 860 (10th Cir. 1986) ("The § 541 estate . . . includes any right of action the debtor corporation may have to recover damages for misconduct, mismanagement, or neglect of duty by a corporate officer or director."). These claims may be asserted on behalf of the estate by the trustee, *Mitchell Excavators, Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir. 1984) ("[W]hile normally the fiduciary obligation of officers, directors and shareholders 'is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee.' ") (quoted source omitted), or by the debtor in possession, 11 U.S.C. § 1107(a) (With

exceptions not material here, "a debtor in possession shall have all the rights . . . of a trustee serving in a case under this chapter.").

¶ 11. During the pendency of the bankruptcy proceedings, Beloit Corporation and Harnischfeger were permitted to operate their business as debtors in possession. This meant that during that time they were fiduciaries for the bankruptcy estate and that their fiduciary duties ran to their creditors as well as their shareholders. *Williams v. Williams*, 152 B.R. 123, 127 (N.D. Tex. 1992) ("The debtor in possession is a fiduciary for the bankruptcy estate. Although prior to a bankruptcy filing management's fiduciary duty went to the corporation's shareholders, with a debtor in possession that fiduciary duty changes by running to the creditors as well as the shareholders.") (decision by Bankruptcy Judge Steven A. Felsenthal). Thus, by virtue of 11 U.S.C. § 1107(a), Beloit Corporation and Harnischfeger, as debtors in possession, could have sued the defendants for the claims asserted in the supplemental complaint. But, as we have seen, they were, as the bankruptcy court's June 5, 2001, order recites, "unwilling to prosecute any such claims."

¶ 12. In light of the refusal of Beloit Corporation and Harnischfeger as debtors in possession to sue those whom the Committee of Unsecured Creditors asserted were responsible for Beloit Corporation's insolvency and losses, the bankruptcy court authorized the Committee to bring this action. This was not only contemplated by the Settlement Agreement and the Plan, but was also expressly permitted by 11 U.S.C. § 1123(b)(3)(B) (plan may "provide for . . . enforcement . . . by a representative of the estate appointed for such purpose" of claims "belonging to the debtor or to

the estate") (referencing 11 U.S.C. § 1123(b)(3)(A)). *Texas Gen. Petroleum Corp. v. Leyh*, 52 F.3d 1330, 1334–1335 (5th Cir. 1995) (11 U.S.C. § 1123(b)(3)(B) allows the appointment of someone other than the debtor or trustee to enforce claims of the debtor).

¶ 13. 11 U.S.C. § 108(a) gives to a "trustee" "two years after the order for relief" to commence an action possessed by the debtor before the petition was filed if an applicable statute of limitations has run before the expiration of that two-year period. The phrase "order for relief" is a term of art and means "[t]he commencement of a voluntary case under a chapter of this title." 11 U.S.C. § 301. Thus, as recognized by the bankruptcy court, the two-year grace period granted by § 108(a) would "arguably expire as early as June 7, 2001, the second anniversary of the entry of the first order for relief in these bankruptcy cases."[4]

¶ 14. The core question here is: Does 11 U.S.C. § 108(a) apply to the action commenced by the Committee of Unsecured Creditors authorized by the bankruptcy court to bring an action on the Estate's behalf and in the name of Beloit Corporation? There are two independent reasons why the answer to this question is "yes": principles of issue preclusion and general bankruptcy law.

### 1. Issue Preclusion.

¶ 15. Over the years, courts have evolved principles that preclude re-litigation of matters that have

---

[4] The bankruptcy court also recognized in its order that the Committee of Unsecured Creditors "believes that the applicable statutes of limitations will not run as of that date"—June 7, 2001.

already been decided. These principles are subsumed in the doctrines of claim preclusion and issue preclusion, which were formerly known as *res judicata* and collateral estoppel respectively. *Jensen v. Milwaukee Mut. Ins. Co.*, 204 Wis. 2d 231, 235, 554 N.W.2d 232, 233–234 (Ct. App. 1996). Under claim preclusion, a final judgment in an earlier matter is conclusive upon the parties in that earlier matter and those in privity with those parties, and the final judgment governs all issues that were either litigated or might have been litigated. *Id.*, 204 Wis. 2d at 235, 554 N.W.2d at 234. Issue preclusion, on the other hand, can apply even though there is not an "identity of parties" in the earlier and later matters so long as the "issue of law or fact" for which preclusive effect is sought "has been actually litigated and decided in a prior action and reduced to judgment." *Ibid.* Although claim preclusion might also apply here, a matter that we do not decide, we believe that issue preclusion does apply and prevents re-litigation of whether 11 U.S.C. § 108(b) permits the Trust's claims against the defendants to survive the statute of limitations.

¶ 16. An initial hurdle to the application of issue preclusion is whether the prior proceeding resulted in a decision that was "reduced to judgment." *Jensen*, 204 Wis. 2d at 235, 554 N.W.2d at 234. This obstacle is cleared easily. Under bankruptcy law, a "confirmed plan has the effect of a final judgment." *Berryman Prod., Inc. v. Nationwide Mut. Ins. Co.*, 183 B.R. 463, 467 (N.D. Tex. 1995) ("A plan is a contract between a debtor and its creditors. Moreover, a confirmed plan has the effect of a final judgment. If the plan is confirmed, all questions that could have been raised are foreclosed by *res judicata.*") (internal citations omitted). We thus turn to an analysis of the requisite considerations.

405

¶ 17. Use of issue preclusion against a non-party requires assessment of various "fundamental fairness" factors. *Jensen*, 204 Wis. 2d at 237–238, 554 N.W.2d at 234–235. Before that stage is reached, however, a court must first "determine whether the litigant against whom issue preclusion is asserted was in privity or had sufficient identity of interest with a party to the prior proceedings to comport with due process"—namely whether "the litigant had sufficient opportunity to be heard" in the earlier proceeding. *Paige K.B. v. Steven G.B.*, 226 Wis. 2d 210, 226, 594 N.W.2d 370, 377 (1999). Here, as we have seen, the defendants were closely aligned with both Beloit Corporation and Harnischfeger, and were or had been officers or directors of one or both companies. As we have also seen, the Trust's right to sue the defendants was preserved by the Plan and authorized by the bankruptcy court, both in its confirmation order and its June 5 order. The parameters of the Trust's right to sue were also hammered out in negotiations that resulted in the Committee Settlement Agreement. Indeed, evidence in the record of the give-and-take nature of the negotiations is that any recovery by the Trust against the defendants will not run against the defendants personally. The Settlement Agreement recited, "it is expressly agreed that any settlement or judgment against any current or former [Beloit Corporation or Harnischfeger] director or officer will be payable solely from any applicable insurance of the Beloit Entities [as defined by the Agreement] or the [Harnischfeger] Entities [as defined by the Agreement] covering such directors' and officers' liabilities (specifically excluding any individual umbrella policies of such directors or officers)." We see no due-process bar to the

application of issue preclusion here. We now turn to the fundamental-fairness factors. They are:

1. Whether the party against whom issue preclusion may apply could have sought review of the issue decided in the earlier matter;

2. Whether there is a significant distinction between the issue decided in the earlier matter and that issue's relationship to the current dispute;

3. Whether there have been "intervening contextual shifts in the law" that weaken the analytical nexus between the issue that was decided in the first matter and the current question;

4. Whether there are "significant differences in the quality or extensiveness of the proceedings" that "warrant relitigation of the issue";

5. Whether there is a difference in the burdens of persuasion; and

6. Whether there "are matters of public policy and individual circumstances involved that would render the application of [issue preclusion] to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action."

*Jensen*, 204 Wis. 2d at 237–238, 554 N.W.2d at 234–235. We consider these factors in turn.

a. *Opportunity to seek review.*

¶ 18. As we have seen, the defendants or those aligned with their interests, as evidenced by not only the defendants' management positions with the debtors in possession, as recounted in footnote one, but also by

the refusal of the debtors in possession to sue the defendants, had significant input in the Plan's formulation. Moreover, no one opposed the bankruptcy court's issuance of its June 5, 2001, order. Although as a general rule, issue preclusion does not flow from default judgments, the rule is not inflexible. *Heggy v. Grutzner*, 156 Wis. 2d 186, 193, 456 N.W.2d 845, 849 (Ct. App. 1990). Under the circumstances here, the fact that the defendants did not formally appear to contest the issuance of the June 5 order permitting this action does not negate application of issue preclusion. Consideration of the first factor favors application of issue preclusion.

b. *Distinction between issues.*

¶ 19. Whether 11 U.S.C. § 108(a) applies to the Trust's action against the defendants was a factor leading to the bankruptcy court's issuance of its June 5 order. The issues are not, therefore, "distinct." Consideration of the second factor favors application of issue preclusion.

c. *Intervening contextual shifts in the law.*

¶ 20. There have been no "intervening contextual shifts in the law" in connection with 11 U.S.C. § 108(a). Consideration of the third factor thus also favors application of issue preclusion.

d. *Difference in the nature of the proceedings.*

¶ 21. As noted, whether 11 U.S.C. § 108(a) applies here is an issue of law. It was also an issue of law before the bankruptcy court. Although the bankruptcy court's assumption that the Committee of Unsecured Creditors and, later, the Trust, could use § 108(a) to avoid the statute-of-limitations bar was not "litigated" as such in

the bankruptcy proceeding, it was not litigated because no one, not the debtors or the defendants, objected to the bankruptcy court's June 5 order. Indeed, the June 5 order was envisioned by both the Settlement Agreement and the Plan. Consideration of the fourth factor favors application of issue preclusion.

e. *Difference in the burdens of persuasion.*

¶ 22. Again, whether 11 U.S.C. § 108(a) applies here is an issue of law. Thus, evidentiary "burdens of persuasion" do not apply.

f. *Public policy.*

¶ 23. As we have seen, everyone—the bankruptcy court, the debtors, and even the defendants—recognized that the Trust would be bringing this action. We see no matter of public policy that would make application of issue preclusion in connection with 11 U.S.C. § 108(a) "fundamentally unfair." In light of this, and in light of the other factors, we conclude that the defendants are barred by principles of issue preclusion from contending that § 108(a) does not apply here.

2. Bankruptcy Law.

¶ 24. Although a creditor may not use 11 U.S.C. § 108(a) to extend an expired statute of limitations, *United States v. C.I.T. Constr. Inc. of Texas*, 944 F.2d 253, 259–260 (5th Cir. 1991), a creditor or committee of creditors appointed by the bankruptcy court can use § 108(a) because under that circumstance the creditor or committee of creditors are not suing on their own behalf but, rather, "for the benefit of the estate," *id.*, 944 F.2d at 260 n.10. As we have seen, 11 U.S.C.

§ 1123(b)(3)(B) specifically permits a plan to "provide for . . . enforcement . . . by a representative of the estate appointed for such purpose" of claims "belonging to the debtor or to the estate." Here, of course, the Plan provided that the Committee of Unsecured Creditors and, later, the Trust, would enforce these claims.

■

¶ 25. The circuit court held that the Committee of Unsecured Creditors could not take advantage of 11 U.S.C. § 108(a) because, in the circuit court's view, Beloit Corporation was no longer a debtor in possession on May 18, 2001, when the bankruptcy court confirmed the Plan. Thus, the circuit court reasoned, Beloit Corporation was re-vested with its right of action against the defendants before the Committee of Unsecured Creditors filed its original complaint on June 5, 2001.[5] The Plan, however, provided otherwise, as is permitted by 11 U.S.C. § 1141(b) (*"Except as otherwise provided in*

---

[5] The circuit court explained this in its oral decision as reflected by the typed transcript in the record:

> Beloit [Corporation] was a debtor-in-possession and had the right to the benefit of Section 108; however, that existed until the plan was confirmed unless and the parties agree that the plan can specifically provide for a delay in the revesting of the estate of the bankruptcy and if that were to apply, then the benefits of Section 108 would continue beyond the confirmation date of May 18th of 2001.
>
> Reviewing the language that was cited and referred to the Court, however, this Court concludes that it was not the intent of the plan to delay the termination of the debtor-in-possession status of Beloit [Corporation], that the — as of the confirmation date of the plan, the estate, the rights, the assets revested in Beloit [Corporation].
>
> However, under the plan it was the intent that those assets, rights, would be transferred to the liquidating trust as of July 12th.

*the plan or the order confirming the plan,* the confirmation of a plan vests all of the property of the estate in the debtor.") (emphasis added). As material here, the Plan provided:

- "On the Effective Date, Beloit [Corporation] shall be deemed to transfer to the Liquidating Trust all of its right, title and interest in (1) all of its assets"; and

- "Rights and causes of action . . . belonging to Beloit [Corporation] shall, on the Effective Date, be deemed to be transferred to the Liquidating Trust and the Plan Administrator and its representatives."

Thus, the Plan modified in two significant ways the general rule in § 1141(b) that confirmation of a plan vests the property of the bankruptcy estate in the debtor as of the date of confirmation. First, the assets of the estate were not transferred to Beloit Corporation or a successor reorganized entity, but, rather, to the "Liquidating Trust and the Plan Administrator and its representatives." Second, the transfer was not on the date of confirmation, but, rather, on the Plan's "Effective Date." *See In re Consolidated Pioneer Mortgage*

---

At the point of May 18th of 2001, the rights to benefit under [the] Bankruptcy Code to the tolling under Section 108 was then not available to any party.

That on — As of May 18th then the Statute of Limitations once again applied and none of the remaining parties, the parties in this case, would have a right to file an action beyond that date.

Therefore, the filing of the complaint in this case on June 5th of 2001 was beyond the expiration of the Statute of Limitations.

For the reasons expressed in the text of this opinion, we respectfully disagree with the circuit court's analysis.

*Entities*, 264 F.3d 803, 807 (9th Cir. 2001) (recognizing that the general rule in § 1141(b) may be modified by the Plan's provisions); *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 587 (9th Cir. 1993) (provision that "reversion of property from the [bankruptcy] estate to the debtor upon confirmation contained in 11 U.S.C. § 1141(b) is explicitly subject to the provisions of the plan"); *Cunningham v. Healthco, Inc.*, 824 F.2d 1448, 1460 (5th Cir. 1987) (plan governs whether causes of action revert to debtor upon plan's confirmation). Thus, both Beloit Corporation and Harnischfeger remained debtors in possession until the Plan's effective date of July 12, 2001. The defendants' suggestion, adopted by the trial court as seen in footnote 5, that there was a limbo-period between May 18, 2001, and July 12, 2001, when Beloit Corporation was temporarily re-vested with its assets, including its "[r]ights and causes of action," only to be divested of those assets on July 12, flies in the face of not only the Plan but of common sense as well. The bankruptcy court recognized all of this and the significance of the Plan's effective date because its order of June 5, 2001, authorized the Committee of Unsecured Creditors to sue "[b]efore the Plan's effective Date." That is what the Committee did.

¶ 26. These are the critical dates:

- June 7, 1999, when Beloit Corporation filed its voluntary Chapter 11 petition;

- May 12, 2000, when the United States Trustee appointed the Committee of Unsecured Creditors to investigate possible claims against, *inter alia,* the defendants in this case;

- May 18, 2001, when the bankruptcy court en-

412

tered its order confirming the Plan;

- June 5, 2001, when the bankruptcy court entered its order authorizing the Committee of Unsecured Creditors to, in effect, sue the defendants here on behalf of the Beloit Corporation bankruptcy estate;

- June 5, 2001, when the Committee of Unsecured Creditors commenced this action;

- June 7, 2001, when the two-year grace period granted by 11 U.S.C. § 108(a) expired; and

- July 12, 2001, the effective date of the Plan, when the assets of the Beloit Corporation were transferred to the Trust.

The two-year extension granted by 11 U.S.C. § 108(a) did not expire until two years after June 7, 1999. This action, commenced by the Committee of Unsecured Creditors on June 5, 2001, as authorized by the bankruptcy court, was thus timely.

B. *Viability of Supplemental Complaint.*

¶ 27. The circuit court ruled that under *McGivern v. Amasa Lumber Co.*, 77 Wis. 2d 241, 252 N.W.2d 371 (1977), the Trust's supplemental complaint asserting a breach of fiduciary duties owed by the defendants to the creditors of Beloit Corporation did not state a claim. The circuit court explained: "My interpretation then of the Wisconsin law is that as long as the business is a going concern, there is not a fiduciary duty to creditors of the corporation."

¶ 28. The Trust argues that the circuit court should have applied Delaware law, which recognizes that directors and officers of an insolvent corporation

413

owe fiduciary duties to the corporation's creditors. *See, e.g., Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 787–790 (Del. Ch. 1992) (insolvency in fact). The defendants, on the other hand, urge that we uphold the circuit court's rulings, both with respect to its decision to apply Wisconsin law and its interpretation of that law. We now turn to those matters.

1. Choice of Law.

¶ 29. The general rule is that the state of incorporation provides the law governing issues surrounding the liability of corporate directors or officers. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 309 (1971). This general rule has been called a presumption, *Resolution Trust Corp. v. Chapman*, 29 F.3d 1120, 1122 (7th Cir. 1994), *overruled on other grounds by Atherton v. Federal Deposit Ins. Corp.*, 519 U.S. 213 (1997), and is known as the "internal affairs doctrine," *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). Section 309 of the RESTATEMENT states the blackletter rule:

> The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the parties and the transaction, in which event the local law of the other state will be applied.

*See also Atherton*, 519 U.S. at 224 ("States normally look to the State of a business' incorporation for the law that provides the relevant corporate governance general standard of care."); *Edgar*, 457 U.S. at 645 ("The internal affairs doctrine is a conflict of laws principle

414

which recognizes that only one State should have the authority to regulate a corporation's internal affairs— matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands."). Significantly, given the issue on this appeal, the RESTATEMENT further explains, "Liability will typically be imposed upon directors under the rule of this Section for such matters as the fraudulent or negligent mismanagement of the corporation's affairs," and this rule "has usually been applied even in a situation where it might be thought that some other state had a greater interest than the state of incorporation in the issue to be determined." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 309, cmts. a & c (1971).

¶ 30. Although the presumption set out in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 309 is rebuttable for matters that do not directly concern the corporation's internal governance, *see id.*, cmt. c; *Resolution Trust*, 29 F.3d at 1126–1127 (Posner, C.J., dissenting) (collecting cases), the factors Wisconsin applies to determine choice of law support the view that here the law of the state of incorporation should control. *Heath v. Zellmer*, 35 Wis. 2d 578, 596, 151 N.W.2d 664, 672 (1967), identified five: (1) "Predictability of results"; (2) "Maintenance of interstate . . . order"; (3) "Simplification of the judicial task"; (4) "Advancement of the forum's governmental interests"; and (5) "Application of the better rule of law." We discuss these factors in turn.

a. *Predictability.*

¶ 31. Beloit Corporation was an international corporation with, as alleged in the supplemental complaint, "65 partially or wholly-owned subsidiaries, including foreign subsidiaries in Asia, Italy, Poland, the United Kingdom, and Austria." The claims asserted by the supplemental complaint are alleged to have arisen because of activities undertaken by Beloit Corporation under the defendants' aegis in: Indonesia; Italy; Poland; Jacksonville, Florida; and Fitchburg, Massachusetts. Moreover, four of the defendants reside in Illinois, one in Wisconsin, one in Oklahoma, and one in Texas.

■

¶ 32. The core rationale of the predictability factor is that persons entering into legal relationships need to "know that their rights will be the same, irrespective of the forum." *Id.*, 35 Wis. 2d at 596, 151 N.W.2d at 672. Although, as the defendants posit, the ultimate decisions in connection with the matters encompassed by the Trust's supplemental complaint may have been made in Wisconsin (although there is no evidence of that in the record, and significantly, for at least part of the time material to this appeal, Beloit Corporation was headquartered in Illinois), not applying the law of the state of incorporation would open areas of evidentiary inquiry and balancing of contacts that would be so case-specific as to destroy any semblance of predictability. This means that officers and directors would have no way of assessing the legal consequences of their decisions, and, also, persons and entities relying on the good-faith exercise of corporate discretion would have no way of knowing their remedies if their reliance was misplaced. *See Nagy v. Riblet Prod. Corp.*, 79 F.3d 572, 576 (7th Cir. 1996) (liability of

majority shareholders to former chief executive officer). Moreover, blindly applying the law of the forum would encourage forum-shopping. The first factor favors applying Delaware law.

b. *Maintenance of interstate order.*

¶ 33. One of the bases underlying this second factor is "that no state should impose its law in a situation when its parochial rules would unduly and without substantial reason so impinge upon another state as to interfere with the free flow of commerce." *Heath*, 35 Wis. 2d at 596, 151 N.W.2d at 672. To the extent that commerce might be affected adversely by the lack of predictability discussed in the preceding paragraph, this factor favors applying Delaware law. Indeed, the Wisconsin statutes recognize in analogous situations that Wisconsin has a policy of deferring to the law of the state of incorporation. Thus, WIS. STAT. § 180.0747 provides that the law of the state of incorporation governs shareholder-derivative actions brought in Wisconsin courts "in the right of a foreign corporation." The rule is the same in connection with the liability of limited partners of a foreign limited partnership; the governing law is that "of the state under which a foreign limited partnership is organized." WIS. STAT. § 179.81. Although WIS. STAT. § 180.1704, with exceptions not material here, provides that WIS. STAT. ch. 180 "applies to all foreign corporations transacting business in this state on or after January 1, 1991," nothing in chapter 180 purports to define or regulate the liability of corporate officers and directors for breaches of their duties to the corporation, except the provisions relating to shareholder-derivative ac-

tions, Wis. Stat. §§ 180.0740–180.0747, which recognize the primacy of the law of the state of incorporation, § 180.0747.

c. *Simplification of the judicial task.*

¶ 34. It is, of course, always easier for the forum court to apply its own law, except when local law is complex or uncertain compared to that of the other state. *Heath*, 35 Wis. 2d at 597, 151 N.W.2d at 672–673. This factor favors applying Wisconsin law.

d. *Advancement of the forum's governmental interest.*

¶ 35. The forum's governmental interest is usually reified in its law, and, unless that law as reflected by ancient precedent is "anachronistic," this factor favors applying the forum's law. *Id.*, 35 Wis. 2d at 597–598, 151 N.W.2d at 673.

e. *Application of the better rule of law.*

¶ 36. Here again, unless the forum's law is " 'obsolete or senseless,' " that is the law that will be perceived by the forum court as "better." *Id.*, 35 Wis. 2d at 598–599, 151 N.W.2d at 673–674 (quoted source omitted).

¶ 37. The five *Heath* factors would not apply, however, if "the contacts of [the non-forum state whose law a party seeks to apply] to the facts of the case are so obviously limited and minimal that application of that

state's law constitutes officious intermeddling." *American Standard Ins. Co. v. Cleveland*, 124 Wis. 2d 258, 263, 369 N.W.2d 168, 171 (Ct. App. 1985). Here, the plaintiff Trust is a Delaware trust, and, in light of Beloit Corporation's choice of Delaware not only as the state in which to incorporate but, significantly, as the state in which to seek protection of the bankruptcy court, it can hardly be said that Delaware's contacts with this case are so *de minimis* so as to make application of its law officious intermeddling.[6] Our analysis of the five *Heath* factors and the presumption recognized by RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 309 lead us to conclude that Delaware law applies, as phrased by § 309, "to determine the existence and extent of a director's or officer's liability to the corporation [or] its creditors."

¶ 38. As seen below, we also conclude that under the liberal standard governing whether a complaint should be dismissed for failure to state a claim upon which relief can be granted, *Morgan*, 87 Wis. 2d at 731, 275 N.W.2d at 664, the Trust's supplemental complaint states breach-of-fiduciary claims against the defendants under Wisconsin law. Normally, that would end the matter without a choice-of-law analysis. *See Hunker v. Royal Indem.*, 57 Wis. 2d 588, 598, 204 N.W.2d 897, 902 (1973) (conflicts analysis is academic unless the choice of law is outcome-determinative). Nevertheless, we believe it important to state our conclusion that Delaware law applies in case there should be a later conflict between Delaware law and Wisconsin law. *See State ex rel. Jackson v. Coffey*, 18 Wis. 2d 529, 533, 118 N.W.2d

---

[6] The parties agreed during oral argument that both Beloit Corporation and Harnischfeger could have chosen the bankruptcy court in the Eastern District of Wisconsin as the forum in which to file their Chapter 11 petitions. They did not. They chose Delaware.

939, 942 (1963) (issues briefed may be considered if they may be significant on remand even though other issues are dispositive of appeal).

## 2. Liability of Corporate Directors and Officers to Creditors under Wisconsin Law.

¶ 39. As we have seen, the circuit court held that the Trust's supplemental complaint did not state claims under Wisconsin law against the defendants for breach of the defendants' pre-petition fiduciary duties to the creditors of Beloit Corporation because, until Beloit Corporation filed its Chapter 11 petition it was a "going concern." That, however, is not the test. Rather, as we show below, officers and directors of a going concern have fiduciary responsibilities to creditors as a group when that corporation is insolvent. *McGivern* recognizes the governing standards.

¶ 40. Barbara McGivern had loaned Amasa Lumber Company significant sums of money, taking in return unsecured notes and assurances given to her by Joseph J. Meyer, the president, principal shareholder, and director of Amasa Lumber, that the company's assets were more than sufficient to repay her, and that his interest in the company was subordinated to her loans. *McGivern*, 77 Wis. 2d at 248–249, 252 N.W.2d at 374–375. The trial court refused to instruct the jury that "an officer or director of a corporation occupies a position of trust and confidence with respect to the corporation and its creditors, and is under an obligation to exercise good faith, reasonable diligence, and standard skill in the performance of his duties to the corporation and its creditors." *Id.*, 77 Wis. 2d at

420

250–251, 252 N.W.2d at 375. The jury returned a verdict for Meyer, and *McGivern* affirmed. *Id.*, 77 Wis. 2d at 261, 252 N.W.2d at 380.

¶ 41. *McGivern* recognized that although some courts "have viewed officers and directors of a *solvent* corporation as trustees or agents for creditors of the corporation, this court has not adopted this view." *Id.*, 77 Wis. 2d at 253, 252 N.W.2d at 376–377 (emphasis added). But, *McGivern* specifically noted that under Wisconsin law the rule is otherwise when the corporation is insolvent: " 'In such case, the authorities seem to be uniform that the directors and officers of the corporation are trustees of the creditors, and must manage its property and assets with strict regard to their interests.' " *Id.*, 77 Wis. 2d at 254, 252 N.W.2d at 377 (quoting *Haywood v. Lincoln Lumber Co.*, 64 Wis. 639, 646, 26 N.W. 184, 186 (1885)). *McGivern* explained the thrust of *Haywood*'s holding:

> Some of the language in *Haywood* may appear to support the existence of some type of fiduciary relationship between corporate directors and creditors generally, *regardless of solvency or insolvency of the corporation*. However, the court did not define the nature of the relationship. And the facts of the case indicate the court did not intend to recognize a fiduciary duty *to a single creditor or the right of a single creditor* to sue a director for breach of such duty. The *Haywood Case* involved a dispute between the officers and directors of the corporation and a receiver for the corporation appointed by the court, not a single creditor of the corporation. Decisions after *Haywood* have moved away from the concept of a director's fiduciary duty to creditors *except perhaps where the corporation was insolvent and no longer a going concern*. As indicated above, Amasa Lumber Company was a solvent and going concern until well after Joseph Meyer's connection with the corporation was severed.

421

*McGivern*, 77 Wis. 2d at 255, 252 N.W.2d at 377–378 (internal citations omitted) (emphasis added). Although the third set of italicized words in the quotation from *McGivern* can be read as requiring both insolvency and a cessation of business, that reading would ignore the inherent redundancy of the phrase "insolvent and no longer a going concern" (that is, a cessation of doing business as a "going concern" that was not caused by insolvency would not prejudice those to whom debts were owed). *See, e.g., Schmitz v. Wisconsin Soap Mfg. Co.*, 204 Wis. 149, 154–155, 235 N.W. 409, 411 (1931) ("It is when a corporation ceases to be a going institution, *or* its business is in such shape that its directors know, or ought to know, that suspension is impending, that its assets in the hands of such directors become, by equitable conversion, a trust fund for the benefit of its general creditors, so that, if such directors prefer themselves over such general creditors, such action constitutes a fraud in law, and equity will compel them to make restitution of all property thereby diverted to their personal benefit to the prejudice of such creditors.") (quoted source omitted) (emphasis added); *Cream City Mirror Plate Co. v. Coggeshall*, 142 Wis. 651, 655–656, 126 N.W. 44, 45 (1910) (law should protect general creditors against corporate waste by corporate directors).[7]

---

[7] The defendants contend that one of the early Wisconsin cases, *Boyd v. Mutual Fire Ass'n of Eau Claire*, 116 Wis. 155, 90 N.W. 1086 (1902), "explicitly rejected the argument that a fiduciary duty to creditors existed if the corporation was a going concern." We disagree. *Boyd* and the cases upon which it relied merely recognized that Wisconsin law would not impose a trust on the property of a corporation that, although financially distressed, was still "a going concern." *Id.*, 116 Wis. at 170–174, 90 N.W. at 1092–1093 (dictum) (noting that once the corpora-

¶ 42. More important, however, is that *McGivern* explained that the nub of the matter was not whether

tion was "adjudged insolvent," however, an "express trust" was created so, under the law as it then existed, the asserted "statute of limitations did not run in favor" of the officers and directors alleged by the corporation's receiver to have misappropriated corporate funds). *Boyd* relied on *Ballin v. Merchants' Exchange Bank*, 89 Wis. 278, 61 N.W. 1118 (1895), *Hinz v. Van Dusen*, 95 Wis. 503, 70 N.W. 657 (1897), and *Slack v. Northwestern National Bank of Superior*, 103 Wis. 57, 79 N.W. 51 (1899). *Boyd*, 116 Wis. at 173, 90 N.W. at 1092.

*Slack* and *Ballin* held that prior to an adjudication of insolvency, creditors acting in good faith may seek to recover from the corporation on their debt even though they knew that the corporation was insolvent. *Slack*, 103 Wis. at 62–66, 79 N.W. at 53–54; *Ballin*, 89 Wis. at 285–290, 61 N.W. at 1119–1121. *Hinz* also recognized that, in that era, mere insolvency would not "prevent a diligent creditor from proceeding in an adversary way to collect his debt by the ordinary processes of the law, and thereby gain a preference over other creditors." *Hinz*, 95 Wis. at 508, 70 N.W. at 658. But *Hinz* also recognized that "when a corporation ceases to be a going institution, *or* its business is in such shape that its directors know, or ought to know, that suspension is impending, that its assets in the hands of such directors become, by equitable conversion, a trust fund for the benefit of its general creditors, so that, if such directors prefer themselves over such general creditors, such action constitutes a fraud in law, and equity will compel them to make restitution of all property thereby diverted to their personal benefit to the prejudice of such creditors." *Id.*, 95 Wis. at 508–509, 70 N.W. at 659 (emphasis added). It is, as A. E. Housman observed in A Shropshire Lad, canto 54 (obviously in another context), a "brook too broad for leaping" to contend from these cases that officers and directors of an insolvent going-concern corporation have no fiduciary responsibilities to the corporation's creditors. Indeed, as we have seen in the text of this decision, the law in Wisconsin is otherwise.

423

the officers and directors of an insolvent corporation owed creditors fiduciary responsibilities—they do under Wisconsin law, *Burroughs v. Fields,* 546 F.2d 215, 217 (7th Cir. 1976); *Malloy v. Korf,* 352 F. Supp. 569, 571 (E.D. Wis. 1972); *Waldschmidt v. Gilly,* 17 B.R. 784, 786–787 (E.D. Wis. 1982)—but, rather, who could sue to recover for any breach of that duty: "Even where it could be said that in some sense a fiduciary obligation existed to creditors generally, the issue remains as to who has the right to sue for losses due to the breach of duty." *McGivern,* 77 Wis. 2d at 255–256, 252 N.W.2d at 379. The answer:

> "Directors are liable to be charged as trustees of property fraudulently misapplied or wasted by them, independent of any statute on the subject, *but the duty of enforcing such liability is in* the managing officers of the corporation, though it may be performed by stockholders, *or creditors,* or possibly the assignee, *or successor or the corporation, when the circumstances are such as to make that necessary,* independent of any statute on the subject."

*Id.,* 77 Wis. 2d at 257, 252 N.W.2d at 378 (quoting from *Gores v. Day,* 99 Wis. 278, 280, 74 N.W. 787, 788 (1898) (emphasis added)). Thus, quoting from an established corporate-law treatise, *McGivern* observed:

> "Where, however, an officer, director, or employee has violated a duty to the corporation, the creditor benefits (if only by an increase in his margin of security) when the corporation's cause of action is successfully asserted. Assertion may be by the corporation— that is, be authorized *by* the board. If the potential defendants dominate the board and action by the

corporation is thus never authorized, assertion *on behalf of* the corporation may be had in many cases through a shareholders derivative action . . . . *Furthermore, receivers and trustees in bankruptcy often assert causes of action on the corporation's behalf."*

*McGivern*, 77 Wis. 2d at 256 n.7, 252 N.W.2d at 378 n.7 (quoted source omitted) (ellipses by *McGivern*) (last emphasis added). This is what was done here: the bankruptcy court's June 5, 2001, order authorized the Committee of Unsecured Creditors to sue the defendants "in the name of and on behalf of Beloit" Corporation. *C.I.T. Constr.*, 944 F.2d at 260, n.10 (creditor committee may sue on behalf of bankruptcy estate). This provided the mechanism whereby the creditors, as a group for the benefit of the bankruptcy estate, could seek recompense for the actions of the defendants that allegedly caused harm to the creditors as a group during the period of Beloit Corporation's alleged pre-bankruptcy insolvency. The supplemental complaint states claims under Wisconsin law for the damages the creditors as a group allegedly sustained as the result of what the Trust claims the defendants did.

## III.

¶ 43. In sum, we hold that, assuming that the Trust's supplemental complaint asserts claims that are subject to the two-year statute of limitations for intentional torts, the June 5, 2001, filing by the Committee of Unsecured Creditors pursuant to the order of the bankruptcy court entered that day was timely under 11 U.S.C. § 108(a). We also hold that the supplemental complaint states claims for alleged breaches of the defendants' fiduciary duties to both Beloit Corporation and to the Corporation's creditors. Accordingly, we

reverse and remand this matter for further proceedings consistent with this opinion.[8]

*By the Court.*—Order reversed and cause remanded.[9]

---

[8] On the last one and one-half pages of their response brief on this appeal, the defendants mention, without development or exegesis, what they contend are "additional grounds" by which we may affirm the circuit court. We will not, however, address arguments that are insufficiently developed. *See Barakat v. Department of Health & Soc. Servs.*, 191 Wis. 2d 769, 786, 530 N.W.2d 392, 398 (Ct. App. 1995) (appellate court need not consider "amorphous and insufficiently developed" arguments).

[9] A little more than one week before oral argument, the defendants, by motion, asked us to take judicial notice of a statement made by one of the Trust's lawyers (not one of the lawyers representing the Trust here) in a related but separate action by the Trust against PricewaterhouseCoopers. The defendants contend that the statement is an admission that negates at least some of the claims asserted by the Trust in its supplemental complaint in this case. We disagree. The statement is not a "judicial admission" that might bar this action conclusively, either in whole or in part. *See Fletcher v. Eagle River Mem'l Hosp., Inc.*, 156 Wis. 2d 165, 174–177, 456 N.W.2d 788, 792–794 (1990) ("judicial admissions," which apply only to facts, must have clarity akin to either a waiver or stipulation). Additionally, at this stage of the proceedings, we defer to the trial court to exercise its discretion in determining whether the statement is admissible at trial, to be given whatever weight the fact-finder deems appropriate. *See* Wis. Stat. Rule 908.01(4)(b)(2)–(4) (Judicial Council Committee Note to Rule 908.01(4)(b): "Wisconsin's cases have implied that evidentiary admissions by attorneys are admissions of the client."); *Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co.*, 828 F.2d 1245, 1249 n.3 (8th Cir. 1987) (abandoned pleading admissible against client); *United States v. McKeon*, 738 F.2d 26, 30–34 (2d Cir. 1984) (attorney's opening statement admissible against client in retrial); *cf. State v. Cardenas-Hernandez*, 219 Wis. 2d 516, 525–533, 579 N.W.2d 678, 682–686 (1998) (upholding trial

¶ 44. WEDEMEYER, P.J. (*dissenting*). I would affirm the trial court for the reasons that follow. The crux of my disagreement with the Majority opinion centers on the choice-of-law analysis pertinent to whether officers and directors of a corporation owe creditors fiduciary responsibilities. The Majority concludes that whether Delaware or Wisconsin law applies, the answer to that question is the samea duty is owed. The Majority also concludes, after engaging in a choice of law analysis, that Delaware corporate law applies. I cannot agree with either conclusion.

¶ 45. First, the Majority begins the choice-of-law analysis by stating the general rule that the state of incorporation, here Delaware, provides the law governing liability of corporate officers/directors. *See* Majority op. at ¶ 29. It cites as authority for this proposition the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 309 (1971). The Majority opinion also turns to the "internal affairs doctrine" in addressing this issue. *Id.* Based on my review, I conclude that Wisconsin has not specifically adopted either the cited restatement or the "internal affairs doctrine."

¶ 46. Second, I find compelling the legislature's decision that Wisconsin's corporation law "applies to all foreign corporations transacting business in this state." WIS. STAT. § 180.1704. The Beloit Corporation was doing business in this state and, therefore, on the face of the statute alone, its activities are governed by Wisconsin corporate law. The dispute, as I see it, then centers on

court's exclusion of "admission" by assistant district attorney; setting guidelines for admission of such evidence in criminal cases). Accordingly, although we grant the motion, and have considered the materials submitted to us by the defendants and by the Trust in response, we deny the substantive relief sought by the defendants in that motion.

427

whether officers/directors of Wisconsin corporations owe a fiduciary duty to creditors. Based on my review of Wisconsin law, I conclude that the fiduciary duty to creditors exists in limited circumstances: when a corporation is insolvent *and* going out of business. *See McGivern v. Amasa Lumber Co.*, 77 Wis. 2d 241, 255, 252 N.W.2d 371 (1977); *Malloy v. Korf*, 352 F. Supp. 569, 572 (E.D. Wis. 1972).

¶ 47. The Majority opinion suggests that these two phrases are redundant and, therefore, the fiduciary duty extends in any situation where the corporation is insolvent. I cannot agree. Perhaps our difference of opinion arises out of contrary definitions as to what being "insolvent" means to a corporation. In my opinion, being insolvent is not simply an "inability to pay debts as they become due." This definition was rejected long ago by our supreme court in *Schmitz v. Wisconsin Soap Mfg. Co.*, 204 Wis. 149, 153, 235 N.W. 409 (1931). Rather, *Schmitz* stated that insolvency "simply means that the assets of the alleged insolvent are insufficient, at a fair valuation, to pay his debts." *Id.* I agree with the respondents that on any given day, quarter or year, a corporation may be "both flush with cash and struggling to pay its creditors."

¶ 48. Thus, I conclude that for the fiduciary duty to extend from an officer/director to a creditor, both requirements—insolvency *and* no longer a going concern—are required. The policy behind this rule of law is a matter of common sense. Officers and directors have certain responsibilities to the corporation and its shareholders. Each is supposed to act in the best interests of the corporation. Sometimes these officers and directors also have a personal interest in the corporation. When a corporation is insolvent to the point where it is going out of business, the personal

428

interest often clashes with the interest for the corporation as a whole. As a result, under such circumstances, common law dictates that an officer/director may not act in a fraudulent matter to the detriment of the creditors. *Hinz v. Van Dusen*, 95 Wis. 503, 508–09, 70 N.W. 657 (1897). At that point, the officer/director has a fiduciary obligation to the creditors of the corporation and must act in good faith. Until that point, "[n]either the corporation nor its governing body, *so long as it is a going concern,* holds its property in trust for creditors." *Boyd v. Mutual Fire Ass'n of Eau Claire*, 116 Wis. 155, 181, 90 N.W. 1086 (1903) (emphasis added).

¶ 49. To rule otherwise would open up creditor suits against officers/directors while a corporation is still a "going concern" but, according to some, is "insolvent." It may also negatively affect decisions being made when a corporation is struggling through a particularly difficult quarter or year.

¶ 50. The complaint filed by the creditors here asserts that the officers/directors breached a fiduciary duty to the creditors during times when the corporation was still a going concern. Under those circumstances, and based on my analysis, the creditors lack standing to assert such claims because at the time of the alleged conduct, the officers/directors did not owe a fiduciary duty to individual creditors of the corporation. On this basis, I disagree with the Majority opinion and respectfully dissent.